a test rule for last clear chance cases generally.

In the cases of Ingram v. La. & N. W. R. R. Co., 128 La. 934, 55 South. 580, and Jones v. Mackay Cable Co., 137 La. 121, 68 South. 379, there was no contributory negligence. The injured were lawfully on the track, and were doing all they could to get out of the way.

The case of Ross v. Sibley Ry. Co., 116 La. 790, 41 South. 93, was a very peculiar case; and the court so states. The train was a light log train barely moving, which the engineer could have stopped within a few feet easily in time to have avoided the accident if he had the slightest consideration for the safety of the person he injured; so much so that this conduct was akin to wantonness.

In the case at bar, we have not discussed the question of the speed of the train, because, if we had found it to have been excessive, this would have had the effect simply of aggravating the negligence of the defendant company—not of absolving the decedent from contributory negligence—and our decision is rested on this contributory negligence. But we will say that, considering that the train had not yet reached the village limits for reduction of speed, we have not found that the speed was negligent.

Judgment affirmed.

See dissenting opinion of O'NIELL, J., 75 South. 650.

━━━━━

(75 South. 652)

No. 22201.

CONNELL v. YAZOO & M. V. R. CO.

(April 16, 1917.   Rehearing Denied June 11, 1917.)

*(Syllabus by Editorial Staff.)*

1. MUNICIPAL CORPORATIONS ⬅➡400—CHANGE IN GRADE OF STREET—LIABILITY.

　　Plaintiff's property fronted on a street along a river bank and adjoining a public levee.   A railroad company had its main track on the top of the levee and two service tracks in the street.   In 1885 it raised the grade of the street under a contract with the city by which it obligated itself to raise the street to such levels as should be given by the city engineers.   In 1892, 1899, and 1904 it again raised the grade under permission from the city given on condition that it grade the street or pay a portion of the cost of grading.   In 1913 it raised the levee under a contract with the city under which the work was to be done according to the plans and specifications of the board of state engineers, and, as these plans would have left the railroad tracks upon different levels, it solicited and obtained a change in the plans providing for raising the grade of the street.   The contract provided that it should not be required to assume any obligation or incur any expense in the maintenance of the levee that would not have devolved upon the city, that it should not incur any liability for damage to any person, etc., and that the work was to be done by the company acting as the agent for the city and under its direction and control.   The work was done under the supervision of the board of state engineers and the city engineer.   *Held,* that the railway company acted merely as agent of the city in making the different changes of grade, and was not a trespasser and tort-feasor, but stood in the shoes of the city.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 962–964.]

2. MUNICIPAL CORPORATIONS ⬅➡400—CHANGE IN GRADE OF STREET—LIABILITY.

　　If the action of the city in authorizing and directing the work to be done constituted a tort, its authorization did not protect the railway company; as one person cannot entitle another to commit a tort.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 962–964.]

3. MUNICIPAL CORPORATIONS ⬅➡265—CHANGE IN GRADE OF STREET—LIABILITY.

　　The change of grade of the street was necessarily done under the city's charter authority to fix the grade of its streets, and not by right of the levee servitude resting upon all lands fronting on the Mississippi river, though had there been no embankment in the street the toe of the levee would have reached the property line, especially as the city was advised by the plans and specifications furnished by the board of state engineers that the raising of the street was not necessary to the construction of the levee.

　　[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 711, 713–715.]

4. MUNICIPAL CORPORATIONS ⬅➡733(2) — TORTS—ACTS IN GOVERNMENTAL CAPACITY.

　　The change in grade by the city, even though unauthorized by the charter, was not a tort for which plaintiff could recover damages, as that which is done by a municipality in the exercise of its sovereign governmental authority

may be prevented by resort to the courts, but is not actionable as a tort, though it is done by a mistaken or even an abusive exercise of authority.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1547, 1561.]

Appeal from Twenty-Second Judicial District Court, Parish of East Baton Rouge; H. F. Brunot, Judge.

Action by W. P. Connell, individually and as tutor, against the Yazoo & Mississippi Valley Railroad Company, which called in warranty the City of Baton Rouge. Judgment for plaintiff, and defendant appeals. Judgment set aside, and suit dismissed.

Hunter C. Leake, of New Orleans, Kernan & Wall, of Baton Rouge, and Arthur A. Moreno, of New Orleans (Charles N. Burch and H. D. Minor, both of Memphis, Tenn., of counsel), for appellant. L. D. Beale, City Atty., and S. G. Laycock, both of Baton Rouge, for City of Baton Rouge. Taylor & Porter, of Baton Rouge, for appellee.

PROVOSTY, J. Front street, upon which the property of the plaintiff fronts, in the city of Baton Rouge, is along the river bank. Between it and the bed of the river is the public levee for protecting the low-lying parts of the city from overflow when the river rises above its banks. For many years, under franchises from the city, the defendant company has had its main railroad line on the top of this levee, and two service tracks between it and the line of properties fronting Front street and the river. As the level attained by succeeding floods in the river has risen, the levee has had to be enlarged; and from time to time the level of Front street has been raised. The high water of 1912 admonished the city authorities that a considerable increase in the size of the levee was necessary, and for having this work done the city entered into a contract with the defendant company according to which, in consideration of certain additional privileges, the defendant company was to do the work at its own expense. The work was to be done according to plans and specifications to be furnished by the board of state engineers. That board prepared these plans with a view solely to the construction of the levee, without taking into consideration the railroad situation, with the result that the effect of the plans being carried out would have been to leave the three railroad tracks upon different levels, thus practically disconnecting them. To obviate this result, which, of course, had not entered in the contemplation of the city and the defendant in making their contract for this enlargement work, the defendant company suggested to the city that the plans be changed so as to reconcile the enlargement with the railroad situation; and the city, after having submitted the change to the board of state engineers and secured its approval of same, gave its consent; and the work was done accordingly. The date of this contract was October 28, 1913; and the work under it was completed in May or April, 1914.

The effect was to raise by some three feet, as we gather, the level of Front street, which had already, by several previous raisings, in 1885, 1892, 1899, and 1904, been elevated a couple of feet or so above the level of the ground floor of plaintiff's buildings fronting on the street; and the result was that plaintiff's buildings were practically cut off from all outlet on said street so far as the ground floor was concerned.

The present suit was filed in March, 1915. Plaintiff sues in his own behalf and that of his minor child. The suit is (quoting from the brief of his counsel)—

"for damages on account of the depreciation in value of two pieces of property belonging to plaintiffs fronting on Front street growing out of the gradual and continuous raising of the grade of said street by the defendant."

It will be noted that the ground of the action is not that the defendant company is

occupying the street with its tracks, but solely that it has raised the grade of the street.

In his petition plaintiff treats all these grade raisings as having been done by the defendant company with no authority whatever from the city, and solely for its own convenience.

Defendant pleads that it acted throughout as agent of the city, that the contract of 1913 expressly so provided, and also provided that the city should hold it harmless, and it calls the city in warranty, and asks judgment over against her for whatever amount it may be condemned to pay plaintiff.

[1] We agree with defendant that it acted merely as agent of the city. The raising in 1885 was by virtue of a contract with the city, by which defendant obligated itself to raise the street "to such levels as shall be given by the city engineers." The raising in 1892 was by virtue of a contract by which the defendant company was given permission to elevate its tracks along Front street above the high-water mark of 1892 "on the condition that it grade said street from the track of said company to the gutter line." To the same effect are the contracts between the city and defendant of date 1899 and 1904. By that of 1899 the defendant was to pay for one-half of the cost of "leveling, grading, graveling, and draining the city front in accordance with the plans, profiles, maps, and specifications made by the city engineer," and was to have "the right to make any and all changes and readjustments of its present location lines and levels necessary to conform to said plans, maps, profiles and specifications." By the contract of 1904 the defendant company obligated itself "to grade Front street," the "grade and levels to be given by the city engineer." The contract of 1913 provided that the work should be done "in conformity with plans and specifications submitted by the board of state engineers' and

141 LA.—23

under the supervision of said board"; and it provided further as follows:

"It being further agreed and understood that the railroad company shall not be required to make any additions to or changes in the said levee, or to assume any obligation or incur any expense in the maintenance of the said levee that would not have devolved upon the city of Baton Rouge in case this agreement had not been entered into.

"In the performance of the work hereinabove assumed by the railroad company, the said railroad company shall not incur any liability to the city of Baton Rouge, or to any person, firm, association, or persons, corporations or property holder, for any damage whatever caused by defective construction or faulty maintenance of said levee, whether such damage may result from water or from any other cause, it being understood that all such work of construction and maintenance and reconstruction to be performed by the railroad company at its sole cost and expense shall be done by the railroad company acting as the agent for the city, and under the direction and control of the city; the only obligation undertaken by the said railroad company in connection therewith shall be the payment of the cost of construction and maintenance and reconstruction of said levee."

The work under this contract was done under the supervision of the board of state engineers and of the city engineer, the latter furnishing the levels by placing the stakes.

It is thus seen that the contract of 1913 provided in express terms that the defendant company in doing the work should be acting as agent of the city. The other contracts, while not so providing in express terms, were necessarily to the same effect.

True, the plans and specifications as first prepared by the board of state engineers for the contract of 1913 were changed at the solicitation of defendant, and solely to accommodate defendant, but none the less they were changed, and none the less the work was done only after they had been changed; so that it was, as a matter of fact, done according to the plans and specifications furnished, or approved, by the city and the board of state engineers.

Under these circumstances the defendant company does not stand in the case as a trespasser and tort-feasor, but stands in the shoes of the city; stands precisely as the city

herself would stand if she had done the work directly, without the intervention of defendant, and were now at the bar instead of defendant.

[2] Dealing with the case from that standpoint, what is the legal situation? If the action of the city in authorizing and directing this work to be done constituted a tort, her authorization would not be a protection to defendant; for one person cannot entitle another to commit a tort. But are these street raisings to be viewed in the light of a tort?

The raisings previous to that of 1913 were strictly street grading and drainage propositions, by virtue of the city's charter authority to grade and drain. The raising of 1913 was a combined street grading and levee proposition, the authority for the street feature of it being the charter authority to grade the streets, and the authority for the levee feature of it being the servitude resting upon all lands fronting on the Mississippi river to give up without compensation whatever space may be needed for levee purposes.

[3] Defendant contends that it was a purely levee proposition, because, according to the original level of the land, before Front street had been raised at all, the toe of the levee would have had to be extended to the property line; in other words, that in the absence of the embankment upon Front street it would have been necessary to go down to the original soil formation in order to obtain a safe foundation for the levee, and that this would have carried the toe of the levee to the property line. This argument loses sight of the fact that nothing would have prevented the street being refilled up to a grade corresponding with the level of plaintiff's property after the levee had been completed with its toe thus extended. We think this raising has to be viewed strictly as a street grading proposition.

The city was fully advised by the plans and specifications furnished by the board of state engineers that the raising of this street was in no way necessary for the construction of the levee; hence it was not by right of the levee servitude that she authorized and directed this raising to be done, but necessarily by right of her charter authority to fix the grade of her streets.

[4] But, so viewing this work, we do not think that it or the preceding raisings can be considered as having been tortious. It was the exercise of an authority which the city believed she had. If the authority did not exist, the time for plaintiff to have challenged its existence was when it was being exercised. Plaintiff could not stand by and let the authority be exercised under the impression (even though mistaken) that it existed, and then bring suit as for a tort.

We fully realize that as a street grading proposition this last raising of the level of this street was not necessary—in fact, that it was, perhaps, disadvantageous—but nevertheless the work was done as a street grading proposition, in the exercise of the governmental authority of the city to grade her streets; and that which is done by a municipality in the exercise of its sovereign, governmental authority does not constitute a tort, even though by a mistaken, nay, even an abusive, exercise of the authority. Such erroneous or abusive exercise of governmental authority may be prevented by resort to the courts, but is not actionable as a tort. 28 Cyc. 1262, 1285; Planters' Oil Mill v. Monroe, 52 La. Ann. 1243, 27 South. 684; Allen & Currey Mfg. Co. v. Shreveport Waterworks Co., 113 La. 1091, 37 South. 980, 68 L. R. A. 650, 104 Am. St. Rep. 525, 2 Ann. Cas. 471.

Plaintiff is not now asking that the street be restored to its original level, but is acquiescing in the present status, saving his right to indemnification for the diminished value of his property. The legal situation is therefore that the city has elevated the

grade of the street, and that plaintiff's property has been damaged thereby, and that the city owes indemnification, unless she can show some good cause to the contrary.

But, there not having been a tort, and the defendant having acted as agent, the cause of action, if any, is against the city alone.

The judgment appealed from is therefore set aside, and the plaintiff's suit is dismissed at his costs.