**PANHANDLE CONST. CO. v. SHIREMAN et al.**

**No. 4252.**

Court of Civil Appeals of Texas. Amarillo.

Feb. 11, 1935.

Rehearing Denied March 18, 1935.

Rob't. A. Sowder, of Lubbock, for appellant.

McWhorter & Howard, of Lubbock, for appellees.

MARTIN, Justice.

In 1919, appellees purchased acreage property a short distance east of the city of Lubbock and near what was then a county road. Thereafter, this road was designated as state highway No. 24. About 1932, an additional right of way was acquired for a public road, and same was moved slightly south towards appellees' property. The state at about this same time entered into a contract with appellant for the construction, grading, and drainage of said highway, according to certain plans and specifications. Appellant entered upon said right of way in the performance of said contract, concerning which appellees alleged: "That in the construction of said highway, the south borrow pit was placed along the north edge of plaintiff's property, and that in complying with said contract, the said Panhandle Construction Company lowered the grade immediately in front of and adjacent to plaintiff's property some fifteen feet in depth, thereby cutting off, to plaintiff's damage, the only egress and ingress that she had in and to said property; that prior to the lowering of said grade and the moving of the south line of said highway, plaintiff could easily and with all safety go immediately north and west from her property into the right of way leading into the city of Lubbock; that said means of egress and ingress have been completely taken away by the defendants."

Appellees further alleged that in said contract with the state appellant agreed to indemnify appellees for damages, the exact terms of which we hereinafter set out. They prayed for damages to their property against both appellant and Lubbock county in the sum of $3,500. Judgment, in response to a special issue, was entered against appellant alone for $1,750.

■ The major legal issue here is the liability of a private contractor with the state for damages under the particular facts above set out.

The evidence uncontradictedly shows the presence of a narrow intervening strip of land owned by another, between appellees' land and the public road in question. Appellees had access to the public road over this, since about 1919, and testified to facts showing an easement acquired by prescription, and perhaps by estoppel, over this strip, which gave to them the egress and ingress to their property which it is now claimed has been destroyed and their property rights taken. See 15 Tex. Jur. pp. 784 to 790. The owner of this strip was not a party to this suit. It may well be doubted that a judgment for permanent injury to land may be validly obtained in a proceeding, having for its basis a claim of an interest in real estate resting in parol, to which the record owner and adverse claimant is not a party.

However this may be, the disposition we make of the case renders a decision of the above question unnecessary.

There was no actual physical invasion of appellees' property. Their complaint is that a deep ditch was placed in the edge of said public road right of way, cutting off their egress and ingress to same.

The evidence discloses that the public road in question was one of the designated state highways of Texas; that appellant's contract was with the state of Texas; that it was awarded the contract to construct and build a road upon and across land theretofore condemned for the state and according to certain plans and specifications furnished by the state; that in the performance of its contract it became necessary, according to such plans and specifications, to dig the ditch alongside such road and in front of appellees' premises, which furnished the basis for the present controversy; that such road, including the ditch, was constructed strictly according to the plans and specifications furnished by the state. It is not claimed that appellant was guilty of negligence in the performance of its contract, or that, having alternative methods, it performed same by a method that worked the injury complained of, whereas another method could have been adopted without injuring appellees' property.

The effect of one of appellees' contentions is that appellant is responsible under the common law for the result of its work, though it was only an instrumentality through which the government acted to secure for the public that which the statute gives it the right to have, and the state the right to secure for it. This because of the language of

article 1, § 17 of our State Constitution, reading as follows: "No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money."

The government must of necessity act through human agencies in performing its functions. Are these to be held personally liable when the very act performed was specifically directed and authorized by a sovereign power acting under legislative sanction? True, here there had not been a statutory condemnation of the claimed easement, nor any damages paid, but it sufficiently appears that the roadbed upon which appellant worked had been legally condemned, and that it had a legal right thereon under the sanction of the state, and that all of its acts were authorized by the state upon property lawfully in the custody and control of the state. Can it be said then to be a trespasser, so as to make it liable under the common law? We think not. In this view we are supported by a host of authorities, though there are a few which plausibly reason to the opposite conclusion. For collation of these, all from Kentucky, see City of Ashland v. Queen, 254 Ky. 329, 71 S.W.(2d) 650, 653.

We quote:

"And clearly, in the absence of negligence, the agent or independent contractor constructing the improvement cannot be held personally liable for the compensation payable under the constitutional provision." 16 Tex. Jur. 890, § 234.

"A contractor constructing a drain or sewer or making other public improvements for a municipality under its supervision and control is not liable for injuries resulting to adjoining property, unless the work is improperly or negligently performed, nor is such contractor liable where the negligence charged consists in the method adopted under the direction of the city authorities; but for any injury due to his negligence in the performance of the work the contractor is liable." 43 C. J. 1159, § 1917.

"Again, in condemnation proceedings contractors are exempt from liability on account of damages growing out of the appropriation of lands for public purposes, except for injury resulting to the landowner on account of negligent or unskillful work. Wood v. Drainage District No. 2, 110 Ark. 416, 161 S. W. 1057; Timothy J. Foohey Dredging Co. v. Mabin, 118 Ark. 1, 175 S. W. 400; Mitchell

v. Hahn, 131 Ark. 286, 198 S. W. 528." Burt v. Henderson et al., 152 Ark. 547, 238 S. W. 626, 627.

"Hence, the city being within its legal right in making the public improvement, and the plaintiff construction company having properly done the work, according to the plans and specifications, there would be no liability for damages against the company, though the street was elevated above the defendants' property and cast water thereon, contrary to the natural flow of the same. The work of the construction company was not its personal act, but that of the city of Merkel, which under definite conditions, was liable for damages, if any, flowing from the act complained of. Salliotte v. King Bridge Co. (C. C. A.) 122 F. 378 (6), 65 L. R. A. 620; 43 C. J. p. 1159, § 1917." Russell et ux. v. General Const. Co. (Tex. Civ. App.) 59 S.W.(2d) 1109, 1110 (Writ ref.).

See, also, Gillespie v. Fuller Construction Co. (Tex. Civ. App.) 66 S.W.(2d) 798; Blair v. Waldo (Tex. Civ. App.) 245 S. W. 986; Gay v. Engebretsen, 158 Cal. 21, 109 P. 876, 139 Am. St. Rep. 67; Wallenberg v. City of Minneapolis, 111 Minn. 471, 127 N. W. 422, 856, 20 Ann. Cas. 873; Bernhard v. City of Rochester, 127 App. Div. 875, 112 N. Y. S. 229; Ettor v. City of Tacoma, 77 Wash. 267, 137 P. 820; Norton v. Ransome-Crummey Co., 173 Cal. 343, 159 P. 1177; Connell v. Yazoo & M. V. R. Co., 141 La. 701, 75 So. 652; Newton Auto Salvage Co. v. Herrick, 203 Iowa, 424, 212 N. W. 680.

█ It is vigorously contended that, aside from common-law liability, appellant made itself liable by the stipulations of its contract with the state.

The one emphasized by appellees, and the only one about which there could be any controversy, is in the following language: *"Protection of Adjoining Property.* The Contractor shall take proper measures to protect the adjacent or adjoining property which might be injured by any process of construction and, in case of any injury or damage, he shall restore at his own expense the damaged property to a condition similar or equal to that existing before such injury or damage was done, or he shall make good such injury or damage in an acceptable manner."

Appellant's engagement was to protect against injury from "any process of construction." The language following this clause refers back to it and means, in our opinion, any injury or damage by "any process of construction." Process means "meth-

od of operation incident to the accomplishment of a result." If the method selected for doing the excavating had injured appellees' property, the above stipulation would have applied. For example, if appellant had used dynamite so as to throw rock and débris upon said property, or had excavated with water, running same with mud over appellees' premises, it would have been liable for any damages sustained, and this perhaps without any such contract. See cases of Small v. City of Seattle, 139 Wash. 559, 247 P. 925, 48 A. L. R. 125; Adams & Sullivan v. Sengel, 177 Ky. 535, 197 S. W. 974, 7 A. L. R. 268.

It is the result of the work about which appellees complain, not any injury arising from the method used in accomplishing such result.

Believing that no cause of action was proven against appellant, the judgment of the trial court is reversed, and cause remanded.