WILLIAM P. GLADE, DBA GLADE CONSTRUCTION COMPANY v. ARTHUR E. DIETERT ET UX

No. A-5756. Decided October 24, 1956.
Rehearing overruled December 12, 1956.
(295 S.W. 2d Series 642).

R. E. Rouer, S. G. Johndroe, Jr., Robert H. Goodrich, John Gano, and Earl C. Morgan, all of Fort Worth, for petitioner.

The Court of Civil Appeals erred in holding that the contractor was liable for the damages done while excavating for a storm sewer on plaintiffs' property while working under a contract with the City of Fort Worth. North Am. Dredging v. Pugh, 196 S.W. 255; Northwestern Pac. R. Co. v. Currie, 279 Pac. 1057; Russell v. General Construction Co., 59 S.W. 2d 1109.

Cantey, Hanger, Johnson, Scarborough & Gooch and Jack C. Wessler, all of Fort Worth, for respondent.

On proposition that contractor was liable cited Black v. Baker, Texas Com. App., 111 S.W. 2d 706; King v. Schaff, 204 S.W. 1039; Ideal Laundry Co., 64 S.W. 2d 801.

MR. JUSTICE CULVER delivered the opinion of the Court.

Respondents, Dietert and wife, recovered against petitioner, Glade, for damages to real property. The Court of Civil Appeals affirmed. 286 S.W. 2d 955.

The City of Fort Worth contracted with Glade to construct a storm sewer line through a residential section according to plans and specifications prepared by the City. The City was to furnish the right of way and it staked out the area along a

gully or ravine within which the line was to be constructed. Construction by Glade progressed according to plans and specifications and reached respondents' property on July 24, 1953. Glade entered thereon and bulldozed out three trees within the area staked out by the City. Thereafter, within a matter of minutes he was ordered off the property by respondents and immediately moved his men and equipment therefrom. The City already owned a 5-foot easement across the property of the defendants, but apparently by inadvertence had failed to acquire the necessary additional five feet of right of way. Then the City, having failed to negotiate an agreement with respondents, instituted eminent domain proceedings and on November 30, 1953, deposited the amount of the award made by the Commissioners in the registry of the court. Respondents filed this suit on December 9, 1953, alleging that at the time Glade entered upon their property he was a trespasser. Glade pleaded in abatement his contractual relationship with the City of Fort Worth and that his entrance on the premises was at the direction of the City and constituted an appropriation of lands for public use.

Petitioner brings up the point that in the absence of any negligence or wanton or willful conduct where the contractor performs his contract under the directions of the municipality and in strict compliance with plans and specifications prepared and furnished to him in the construction of the necessary public improvements for public use, he cannot be held liable for damages to the real property of the owner. We conclude that the point is well taken.

Respondents rely on the general rule as stated in 20 A.L.R. p. 109: "A servant who, in carrying out the terms of his employment, or who, by obeying the command of his master, commits a trespass, is personally liable therefor, and cannot plead in defense the fact that his act was that of his master." Among the cases cited in support of this proposition are Nunnelly v. Southern Iron Co., et al, 94 Tenn. 397, 29 S.W. 361, 28 L.R.A. 421 and Diamond et al v. Smith, 27 Texas Civ. App. 558, 66 S.W. 141. Both of these cases involved suits against private corporations and their agents. Respondents further cite as authority for upholding the judgment against the contractor, Glade, City of Dallas v. Miller, 7 Texas Civ. App. 503, 27 S.W. 498; Wilson v. Newton County, Texas Civ. App., 269 S.W. 227; Schooler v. State, Texas Civ. App., 175 S.W. 2d 664; King v. Schaff, Texas Civ. App., 204 S.W. 1039; Black v. Baker, 130 Texas 454, 111 S.W. 2d 706. These cases, we think, do not bear

directly on the point. In none is any judgment rendered against an agent of the governmental agency of the municipality nor is the liability of the agent discussed except in the case of Black v. Baker where it was held that the mayor of the City acted without authority and not at the order or direction of the city council.

Respondent contends that under the general rule of liability the contractor, regardless of negligence as an agent of the City, must be held to respond in damages and that the facts in this case do not constitute an exception to the general rule.

We think the decided cases hold to the contrary and support the position of the petitioner.

■ The decisions generally hold that under a contract with a municipality for the construction of public works the contractor is liable to third parties only for negligence in the performance of the work and not for the result of the work performed according to the contract. Daly v. Earl W. Baker & Company, Okla. 271 Pac. 2d 1114; Tidewater Construction Company v. Manley et al., 194 Va. 836, 75 S.E. 2d 500; Marin Municipal Water District v. Peninsula Paving Co., 34 California App. 2d 647, 94 Pac. 2d 404; Yearsley v. W. A. Ross Const. Co., 309 U.S. 18, 60 Sup. Ct. 413, 84 L. Ed. 554; Panhandle Construction Co. v. Shireman, Texas Civ. App., 80 S.W. 2d 461; Swilling v. Knight, Texas Civ. App., 205 S.W. 2d 421; Blair v. Waldo, Texas Civ. App., 245 S.W. 986. There would seem to be no more valid reason for imposing liability on the contractor for damages done to respondents' land than to an adjoining landowner.

But more to the point is the holding in Wood v. Foster & Creighton Co., 191 Tenn. 478, 235 S.W. 2d 1. The State of Tennessee agreed with the City of Chattanooga on a street-widening project, the City being obligated to secure easements for the right of way. The state then contracted with the defendant to perform the widening work. The job was completed according to the contract and in compliance with the instructions of the state engineer. The City had failed to acquire the easement, either by purchase or condemnation proceedings. The same court that wrote the Nunnelly opinion, supra, (1895) held that the contractor, not being guilty of negligence and having followed the directions of his superior in doing the work, was clearly not liable, but that the City authorized the improvement and, having accepted, would be answerable to the property own-

er for the damages which were occasioned by the improvement. The court reasoned that as a practical matter, in the construction of public improvements, the contractor ought to be relieved from checking every order given him by the public authorities, for if he were required to verify all plans and specifications and not permitted to follow the orders of the engineering force of the state, the cost of public improvements would be immeasurably increased. The court observed that the contractor's work is not the engineering job of laying out the project but consists of doing what he is instructed to do and so long as he complies with the instructions in a workmanlike manner, and not negligently, he is not liable.

In Newton Auto Salvage Co. v. Herrick, 203 Iowa 424, 212 N.W. 680, 681, the court absolves the contractor of all liability. In that case the City also contracted with the defendant to construct a sewer line. The contractor was sued for damages by the landowner whose property lay in the path of the sewer line, but from whom the City had not acquired an easement. While in that case there was no actual entry by the contractor on the owner's property the court held:

"It was the duty of the city to provide right of way, and the defendant in bidding for the work was justified in assuming that the duty of the city in that regard would be observed. It would be destructive of the liberty of municipalities to make public improvements, and of economy in construction, if contractors were required in making their bids to anticipate failure on the part of the municipality to perform such duties and provide against such contingencies as have developed in this case.

"* * * It was the duty of the city to provide plans, and the defendant did not assume any responsibility for defects or insufficiency in the plans. The defendant would be liable ordinarily only for his negligence in the performance of the work contracted for, and not for the result of work performed according to the contract."

cf. Muskatell v. Queen City Construction Co., 3 Wash. 2d 200, 100 Pac. 2d 380.

We have found no case, nor has one been cited, holding a contractor liable under such circumstances.

■ Respondents insist that both the City and Glade were tres-

passers in wrongfully entering upon their property, causing the damage complained of. Conceding the correctness of this allegation, this would not render the contractor liable because until the property of respondent was taken and appropriated they occupied the position of an adjoining landowner. Essentially there is no difference so far as the liability of the contractor is concerned. A trespass was committed in Russell v. General Construction Co., Texas Civ. App., 59 S.W. 2d 1109, writ refused, also in Muskatell v. Queen City Construction Co.; Newton Auto Salvage Co. v. Herrick; Blair v. Waldo and others, supra. To constitute a trespass "entry upon another's land need not be in person, but may be made by causing or permitting a thing to cross the boundary of the premises." 87 C.J.S., Trespass, Sec. 13.

Suppose a contractor constructed a dam for the City according to plans and specifications and the lake thus formed overflowed onto property that the City had not acquired. A trespass is committed by the work of the contractor and the City is liable to the owner for the injury or for the land appropriated, but we think it could not be successfully contended that the contractor is liable in damages. We perceive no material variance between the hypothetical facts stated and those of the instant case.

To hold for the respondents under the facts here would compel the contractor to bear a portion of the cost of obtaining the right of way. The sole element of damage claimed in this suit against the contractor is the destruction of the three trees which were situated within the staked out right of way and which necessarily had to be removed. This right of way had been completely appropriated by the City under eminent domain process prior to the filing of this suit.

Respondents also rely on the decision in the City of Fort Worth v. Dietert, Texas Civ. App., 271 S.W. 2d 299, 301, writ refused, but on the point of liability of the contractor the court held only that an injunction against the prosecution of any suit is a harsh remedy and that "whether or not appellees have a valid claim for damages against Glade in the district court growing out of the entry of July 24th, is a matter for the determination of the district court after a hearing on the merits with all the facts disclosed. If Glade loses in that contest, he has the right of appeal." The court did not pass on or express any opinion as to the matter of Glade's liability to respondents, and we are now passing upon that appeal.

Petitioner contends further that an affirmance of the trial court's judgment in this case would allow the respondents double recovery for the reason that prior to the filing of this suit in the hearing before the special commissioners the respondents pointed out the damage caused by the removal of the trees and all other damages arising out of the construction and installation of the sewer and the damages were awarded by the commissioners, based on the evidence submitted. The respondents answer that they took an appeal which is still pending in the county court and that appeal will be tried de novo without respect or reference to any evidence adduced before the commissioners.

The Court of Civil Appeals in City of Fort Worth v. Dietert, supra, in denying the City's application for an injunction to restrain the prosecution of this suit held that there were two separate causes of action, and that this case for damages resulting from the entry on July 24th was separate and independent of the condemnation suit filed by the City on November 30th. Three courts of civil appeals cases were relied upon for that holding. City of San Antonio v. Fike, 211 S.W. 639; Ideal Laundry Co. v. City of Dallas, 64 S.W. 2d 801 and Gregory v. Gulf & I. R. Co., 21 Texas Civ. App., 598, 54 S.W. 617. In the first case (no writ history) it was held that the landowner could not recover damages for a sidewalk destroyed prior to the institution of the condemnation proceedings. The statement of facts does not reveal how long before the condemnation proceedings the City had torn up the sidewalk nor under what circumstances, or for what reason. In our case the entry by Glade was in pursuance to the plan of public improvement already adopted and in process of construction. In the second case the landowner's cross action for damages arising two years before the condemnation proceedings and growing out of a breach of contract was properly held irrelevant and dismissed. In the last the court correctly excluded from the inquiry in condemnation proceedings as to the value of the property sought to be condemned damages resulting from the failure of the railway company to build cattle guards and fence its right of way. This ruling was correct because Art. 4459, Rev. Stat. 1895, limited the inquiry to "the value of the property sought to be condemned, and as to the damages which will be sustained by the owner thereof by reason of such condemnation, * * *." See Vernon's Ann. Civ. St. Art. 3265, Subd. 1.

Regardless of anything said in City of Fort Worth v. Dietert, supra, the law should not be so strictly construed as to pre-

clude respondents from recovery in the county court, in the case now pending on appeal from the award of the commissioners, of all damages to which they may be entitled, including the diminishment of the land value caused by the removal of the trees.

This conclusion is fortified by the provisions of Art. 3269, Vernon's Ann. Civ. Statutes. Under this statute if the Dieterts had filed their suit before the City undertook to condemn in the county court City could have intervened and exercised the right of eminent domain in the district court. Brazos River Conservation & Reclamation District v. Costello, 135 Texas 307, 143 S.W. 2d 577, 130 A.L.R. 1220.

As pointed out by the petitioners, the measure of damages is the same whether the issue is tried by special commissioners, in the county court on appeal or in the district court on cross-action or by intervention.

■ While technically it may be said that the entry by the contractor as the agent of the City constituted a separate cause of action against the City, yet, under the circumstances in such a case as this, to require the trial of two separate causes of action with double consumption of time and expense, when all of the damage actually was occasioned on account of the public improvement project and in pursuance thereto, would be a hardship on all parties, as well as useless and unnecessary. The destruction of the trees is an element of value to be considered in determining the compensation owed by the City to the landowner for the acquisition of the easement across his property. The City is the only party liable for the right of way taken and used in the construction of a public improvement.

The judgments of the trial court and the Court of Civil Appeals are reversed and the cause is dismissed without prejudice to right of respondents to present their claim for damages in the condemnation suit now pending.

Opinion delivered October 24, 1956.

MR. JUSTICE GRIFFIN joined by JUSTICES SMITH and McCALL dissenting.

I respectfully dissent from the majority opinion in this case.

The City of Fort Worth not having condemned the right-of-

way for the sewer line at the time of the original entry by Glade on July 24, 1953, Glade was a trespasser on the Dietert property at the time he went upon the land and destroyed the three trees. No governmental authority, nor any contractor working for such governmental authority has any right to enter upon land belonging to a private owner until the requisites of the condemnation statutes have been complied with. 16 Texas Jur. 456, 460, Secs. 165, 166 and 167, and cases cited therein. " 'A trespasser on land' is a person who, not having title thereto, without consent of the true owner, makes entry thereon. A corporation which, instead of instituting condemnation proceedings, simply proceeds to appropriate land, is in law a trespasser." 41-A Texas Jur. 466, Sec. 3. "The rule is elementary that whoever commits a trespass, or procures another to commit it, is liable therefor. It is fundamental law that the person who commits a trespass or is guilty of a tortious wrong is the person primarily liable therefor. A party having cause of action for such need inquire no further, but may proceed at once against the person so offending. * * *" Id., p. 473, Sec. 12; Restatement of the Law of Torts, Vol. 1, p. 381, Sec. 163; Id., p. 384, Sec. 164. In order to be liable for a trespass on land under the rule stated in Section 158, (Idem.) it is only necessary that the actor shall intentionally be upon any part of the land in question. These authorities definitely establish that Glade was a trespasser in entering onto the Dietert property, and is liable as such.

The next question to be determined is whether or not damages for this trespass may be recovered in the condemnation brought by the City some months after the commission of the trespass. "* * * In condemnation proceedings, however, the measure of damages is rigidly fixed by the statute of eminent domain or other special statute applicable to the case. * * * the rule is that even if the condemnor has been guilty of wrongdoing prior to the final award, *damages are not recoverable for the tort in the condemnation proceedings;* the owner must himself sue therefor. Accordingly, special damages in tort are not recoverable in condemnation proceedings for the appropriation of the property before the proceedings had been commenced or while they were pending." (Emphasis added.) 16 Tex. Jur. 508-509, Sec. 200; Perry v. Wichita Falls, R. & F. W. R. Co., 1922, Texas Civ. App., 238 S.W. 276, (1-3), no writ history * * * a condemnation case appealed from the county court; Fort Worth & D. S. P. Ry. Co. v. Gilmore, 1928, Texas Civ. App., 2 S.W. 2d 543, (3, 4), holding damages for negligent construction not recoverable in a condemnation proceeding, and where-

in numerous authorities are cited; Jefferson County Traction Co. v. Wilhelm, 1917, Texas Civ. App., 194 S.W. 448, (2), a case where damages for negligence in construction were sought in a condemnation proceeding; Stakes v. Houston North Shore Ry. Co., 1930, Texas Civ. App., 32 S.W. 2d 1110, 1111, (1, 2), no writ history, wherein the trial court had charged the jury that they could not consider any evidence showing or tending to show that the Railroad Company was a trespasser on the land of plaintiff at the time it entered thereon. Complaint was made of the charge, and the Court of Civil Appeals upheld the charge, saying: "* * * These charges were not error, but correct statements of the law of this state. The law, as presented by these charges, has been so many times announced by the courts of this state that a further discussion could add nothing to what has been said so clearly heretofore," citing numerous Supreme Court and Court of Civil Appeals cases.

In the case of City of San Antonio v. Fike, 1919, Texas Civ. App., 211 S.W. 639, 641, the owner of a sidewalk destroyed by the city in the lawful process of widening a street sought recovery in a later condemnation proceeding for the value of the sidewalk. Recovery was denied him on the ground the value of the sidewalk was not a proper item of damages in the condemnation suit. The Court said:

"* * * The general rule is stated to be that damages accruing prior to the institution of condemnation proceedings by reason of an unlawful entry should be recovered in trespass. Lewis on Eminent Domain, Sec. 507. * * * The application of the rule is well illustrated by the case of Gregory v. Railway Co., 21 Texas Civ. App., 598, 54 S.W. 617, in which the railway company entered upon the land without condemning it, and failed to construct fences, etc. It was held that the damages, caused by such failure, whether resulting from inroads of stock or loss of rental value, could not be recovered in the condemnation suit afterwards instituted by the company.

"We conclude that the destruction of the sidewalk was as much an independent tort as would be improper or negligent construction, and that no recovery thereof can be had in this suit."

See also Throckmorton County v. Howsley, 1930, Texas Civ. App., 28 S.W. 2d 951; City of Trinity v. McPhail, 1939, Texas Civ. App., 131 S.W. 2d 803, (6, 7); Ideal Laundry Co. v. City of Dallas, 1933, Texas Civ. App., 64 S.W. 2d 801, (5), dism. w.o.j.,

wherein is found a fine discussion of the nature of condemnation proceedings and damages recoverable therein; City of Fort Worth v. Dietert, 1954, Texas Civ. App., 271 S.W. 2d 299, wr. ref.

"In some jursidictions the rule is that the defendant cannot be held liable as a trespasser where he has the power of eminent domain. *However, the rule in this state is to the contrary.* Here, where the defendant, instead of instituting condemnation proceedings, simply proceeds to appropriate the plaintiff's land, he is in law a trespasser. * * *" (Emphasis added). 16 Texas Jur. 460, Sec. 167. See also Id., p. 456, Sec. 165, 166 for a good discussion of the difference between the constitutional liability of the condemnor and its liability for tort or negligence.

The Texas Supreme Court in the case of Buffalo Bayou, B. & C.R.R. Co. v. Ferris (1863), 26 Texas 588, expressly rejected the doctrine that a defendant having the power of eminent domain could not be held liable as a trespasser for an entry and taking of property prior to complying with the condemnation statutes. The railroad company had entered and taken possession of the plaintiff, Ferris', land and constructed their line upon said land. Ferris sued in the district court for damages for the trespass committed. The railroad company filed a plea in abatement in which it was alleged that its charter issued to it by the Legislature made it lawful for the company to take plaintiff's land for railway purposes, and also specifically relegated plaintiff to the action provided for in Section 8 of its charter for the value of the land taken and damages thereto. Plaintiff's exceptions to the plea in abatement were sustained, and upon a trial judgment for plaintiff was rendered. Defendant appealed and assigned error to the court's sustaining plaintiff's exceptions to the plea in abatement.

In disposing of the case, the court, after discussing the provisions of the railroad's charter, and its right to take property without first having paid the compensation, turns to the contention that the company being authorized to take the property after lawful proceedings, could not be a trespasser for a prior taking without compliance with the necessary statutes. The Court said:

"It may be urged, however, that, although the charter may not have made provision for adequate compensation to appellee for the property taken, yet, in the absence of such provision,

the company were still authorized to enter and take such land as they required to construct their road; and although they might have been restrained from doing so by injunction, they were acting under and in conformity with law, and cannot be regarded as trespassers, and consequently an action cannot be maintained against them for the alleged trespass with which they are charged. Although this doctrine seems to be sustained by high authority, we feel constrained to dissent from it. Rogers v. Bradshaw, 20 Johns. 735; Jerome v. Ross, 7 Johns. Ch. 344. The state is as impotent as an individual to take private property for any purpose without the owner's consent, unless adequate compensation is made for it. Unless this provision of the constitution has been complied with, any interference with private property, it matters not under what pretense, is an injury done to the owner, for which he is entitled to redress 'by due course of law.' The constitution gives a right of action to every one who has received an injury in his lands, goods, etc.; and it cannot be said that an individual's land can be taken from him, let it be done by whom or for what purpose (603) it may, without injury, except where adequate compensation has been made to him for so doing. Nor is it any answer to this proposition to say that the taking of his property is not illegal, because the constitution has guarantied to him compensation for it, and the legislature is bound to secure it to him, and this may be done by a future act. But is the obligation, we may ask, to make him compensation, any stronger upon a future legislature than it was on that one by whose authority his property has been taken; and if it has failed to make a constitutional provision for his compensation, what assurance can he have that any future one will do so? It was, however, to place the rights of property upon higher grounds than the mere legislative sense of justice and equity, that this prohibition upon legislative power was embodied in the bill of rights."

Although this case was decided prior to the adoption in 1876 of our present constitution, the provisions discussed in the Ferris case are substantially the same as in our present constitution.

"Where the corporation enters upon land without the consent or acquiescence of the owner, damages are recoverable for the trespass. In such case, recovery may be sought for the damages accruing from the trespass, with interest down to the date of the trial, or, where a permanent appropriation of the property is intended, for the value of the appropriated property, plus depreciation of the remainder of the same tract of land.

"In addition to the value of the property, if recoverable, the injured owner may recover for any special damages according to the law of trespass. He may recover punitive damages subject to the general law regulating such damages. And he may recover damages for successive trespasses in a single action. *On the other hand, where the appropriator petitions for the condemnation of the land prior to any suit for damages being instituted by the owner, damages for the tort are not recoverable in the condemnation proceedings.* In order to recover damages for the tort in that situation, the owner must institute independent proceedings." 16 Texas Jur. 533, 534, Sec. 212. (Emphasis added).

I take it that all will agree that the value will be determined as of the time of the taking. 16 Texas Jur. 574, Secs. 249 and 250; Art. 3265, "Rule of Damages," Vernon's Annotated Texas Civil Statutes. For additional authorities holding that the value of the property taken is to be fixed at the time of a lawful taking see Texas Western Ry. Co. v. Cave, 1891, 80 Texas 137, 15 S.W. 786, 787; San Antonio & A. P. Ry. Co. v. Ruby, 1891, 80 Texas 172, 15 S.W. 1040; Kirby v. Panhandle & G. Ry. Co., 1905, Texas Civ. App., 39 Texas Civ. App. 252, 88 S.W. 281; Swilling v. Knight, 1947, Texas Civ. App., 205 S.W. 2d 421, no writ history; Blair v. Waldo, 1922, Texas Civ. App., 245 S.W. 986, 989.

Next we come to the question as to whether or not Glade can escape liability because he is a contractor working for the City. I say he is liable as a trespasser, regardless of who his employer might have been at the time he unlawfully entered upon Dietert's land. It is only where the condemning authority is lawfully in possession of the property, or at the time of entry has lawful authority to make the entry, that a contractor acting without negligence is absolved from liability.

Petitioner Glade relies upon the case of Blair v. Waldo 1922, 245 S.W. 986, no writ history, as authority for the proposition that a contractor is not liable for damages when he is acting under authority of a city, and not guilty of negligence in the construction of the public improvement. In that case the court first discusses the liability of the city to the landowner for the trees destroyed by the contractor in constructing a lawful improvement (a sewer line down a city street), and holds that the city would have been liable had the plaintiff sued the city. Next the court takes up the liability of the contractor Waldo to the plaintiff. In holding Waldo not liable the court says:

"This is, as has been shown, a suit against appellee, Waldo, alone to recover compensation expressly given by the Constitution for damages suffered by reason of the lawful and proper construction of a public sewer in accordance with the terms of a contract between him and the city, by which the plan and route of the sewer was designated and fixed. *In such case, the suit is not one for tort, or for any wrong done by Waldo,* but is one for compensation granted by the Constitution to be paid for by those benefited by the act causing the damage; that is, by the city, the aggregate of citizens, the public generally. Brewster v. City of Forney (Texas Com. App.), 223 S.W. 175. We do not think that any cause of action is shown against appellee, Waldo.

"By the charter granted to the city of Houston, it has been clothed with authority to take, damage, or destroy property of a citizen within its corporate limits for public use. *Therefore, if, in the exercise of such authority,* private property is damaged in the proper and lawful construction of a public sewer, it cannot be said to have been unlawfully damaged; nevertheless, in such cases, the injured party is entitled to the compensation, expressly granted by the Constitution, from the city which receives the benefits, but not from officers or agents who act only under the direction of the city. To all practical and legal intents and purposes, the plaintiff's property, to the extent of $300, was taken by and for the benefit of the city, the aggregate of citizens, and not by the appellee, Waldo. Brewster v. City of Forney, supra; Sinnickson v. Johnson, 17 N.J. Law, 129, 34 Am. Dec. 184." (Emphasis added).

Another case relied upon by petitioner Glade is the case of Panhandle Construction Co. v. Shireman, 1935, 80 S.W. 2d 461, 462, no writ history. This case involved the liability of a contractor in constructing a state highway in front of plaintiff's land. That case is distinguishable from our case in various particulars. First, the court said: "There was no actual physilcal invasion of appellees' (plaintiffs) property. Their complaint is that a deep ditch was placed in the edge of said public road right of way, cutting off their egress and ingress to same." Further the court said:

"The government must of necessity act through human agencies in performing its functions. Are these to be held personally liable when the very act performed was specifically directed and authorized by a sovereign power acting under legislative sanction? True, here there had not been a statutory con-

demnation of the claimed easement, nor any damages paid, *but it sufficiently appears that the roadbed upon which appellant worked had been legally condemned, and that it had a legal right thereon under the sanction of the state,* and that all of its acts were authorized by the state *upon property lawfully in the custody and control of the state.* Can it be said then to be a trespasser, so as to make it liable under the common law? We think not. In this view we are supported by a host of authorities, though there are a few which plausibly reason to the opposite conclusion. For collation of these, all from Kentucky, see City of Ashland v. Queen, 254 Ky. 329, 71 S.W. 2d 650, 653." (Emphasis added).

Petitioner also relies on Swilling v. Knight, 1947, 205 S.W. 2d 420, no writ history. That was a case involving a ruling on a plea of privilege. The facts of that case are that the city was lawfully and legally constructing a water and sewer system. Defendant Swilling was the contractor employed by the city to lay the water and sewer lines in the street in front of plaintiff Knight's garage. The damages resulting were alleged to be by virtue of the digging by contractor defendant of a deep ditch and installing the lines therein, in the street in front of plaintiff's garage so as to cut off the ingress and egress to said garage, without right or authority. In holding the petition stated no cause of action against the contractor, the court said:

"* * * In Russell et ux v. General Construction Co., Texas Civ. App., 59 S.W. 2d 1109, 1110, writ refused, it is said:

" 'Hence, *the city being within its legal right in making the public improvement,* and the plaintiff construction company having properly done the work, according to the plans and specifications, there would be no liability for damages against the company, though the street was elevated above the defendants' property and cast water thereon, contrary to the natural flow of the same. The work of the construction company was not its personal act, but that of the city of Merkel, which, under definite conditions was liable for damages, if any, flowing from the act complained of.'

"See also Panhandle Const. Co. v. Shireman, Texas Civ. App., 80 S.W. 2d 461; City of Huntsville v. McKay, Texas Civ. App., 286 S.W. 305; Blair v. Waldo, Texas Civ. App., 245 S.W. 986." (Emphasis added).

I submit that all three of those cases are based upon the proposition that the authority constructing the improvements

had a legal and lawful right to be upon the land being improved, and it was this legality and lawfulness of the authority which protected the contractor.

The majority relies upon the case of Wood v. Foster & Creighton Co., 191 Tennessee 478, 235 S.W. 2d 1, 3, as authority to relieve the contractor in our case of liability for his trespass. That case does not so hold. In the first place that was not a suit for a tort nor for a trespass, but one for negligence as the Tennessee Court said, "* * * The only claim of negligence, insofar as the contractor is concerned, is that the contractor was negligent in not specifically examining the plans to find whether or not the plans showed that the property was to be sloped back. This is the basis of the two lower courts holding that the contractor was negligent."

In the second place, the City was lawfully engaged in the improvement of a roadway or street, and had lawful and legal authority to make such improvement in the street. The damages claimed were because the contractor negligently sloped the bank upon plaintiff's property rather than building a retaining wall. The holding in this Tennessee case follows the pattern of Blair v. Waldo, supra; Panhandle Construction Co. v. Shireman, supra; and Swilling v. Knight, supra. In other words, it was held that the City, being within its legal right in making the improvements, and the construction company having done the work properly according to the plans and specifications, there was no liability on the construction company. Such holding is a far cry from the majority holding that a city and a contractor having made an illegal entry on the land, the contractor is exonerated from liability because the city some time later enters statutory condemnation proceedings. Such doctrine was repudiated by the Supreme Court of Texas some ninety-three years ago, as I have shown in the quotation from Buffalo Bayou, B. & C. R.R. Co. v. Ferris, 1863, 26 Texas 588. In our case it is admitted that neither the City of Fort Worth nor Glade, its contractor, had any legal or lawful right to be upon Dietert's land at the time the trees were destroyed.

This court in a former appeal of a phase in this case, City of Ft. Worth v. Dietert, 1954, Texas Civ. App., 271 S.W. 2d 299, gave a straight refusal to the opinion of the Court of Civil Appeals holding that Dietert's right of action for the trespass committed by Glade was a separate cause of action from the condemnation suit. The City of Ft. Worth attempted in that case to enjoin the prosecution of this very suit against Glade,

on the ground that the County Court at Law of Tarrant County had acquired exclusive jurisdiction of the very issue involved in this suit by Dietert against Glade for damages suffered by reason of his entry upon their land July 24, 1953, and before the city filed its condemnation suit October 30, 1953. The Dieterts filed the suit at bar in the district court against Glade on December 9, 1953. The injunction sought was refused, and that refusal by the trial court affirmed by the Court of Civil Appeals, and we refused the writ of error. By this action we made the Court of Civil Appeals' opinion our own. Heinatz v. Allen, 1949, 147 Texas 512, 217 S.W. 2d 994; Rule 483, Texas Rules of Civil Procedure. I would follow this holding for it is not only the law in our state, but has been the law for more than ninety years.

Glade being a trespasser at the time of the entry upon Dieterts' land in July 1953, is liable to them for damages suffered. I would affirm the Court of Civil Appeals in this cause.

Opinion delivered October 24, 1956.

Rehearing overruled December 12, 1956.