HALL, Judge.
Nine plaintiffs whose property fronts on Canal Street in the City of New Orleans *147 instituted this suit against the City of New Orleans and New Orleans Public Service, Inc. praying: (1) that Ordinance No. 2671 Mayor Council Series, which inter alia, granted New Orleans Public Service, Inc. an indeterminate permit to operate busses on Canal Street, be declared null and void; and (2) that New Orleans Public Service Inc. be temporarily and permanently enjoined “from any activities in furtherance of any plan sought to be authorized by said ordinance.”
The City of New Orleans (“City”) and New Orleans Public Service Inc. (“Public Service”) each filed an exception of no right or cause of action and answers to the petition.
The exceptions were referred to the merits, and the matter came on for trial on plaintiffs’ rule for a preliminary injunction. After hearing evidence on the rule the Trial Court rendered judgment overruling the exceptions, denying the preliminary injunction, and recalling and dismissing the rule nisi. Plaintiffs appealed.
Plaintiffs contend:
1. That Ordinance No. 2671 M.C.S. is “illegal” because the Council President did not comply with the City Charter in transmitting the ordinance “promptly” to the Mayor for his approval or disapproval.
2. That the ordinance is ultra vires in that it went beyond the power of the Council as specifically granted to it by Sec. 4-1602(1) of the City Charter; and
3. That the action of the Council was arbitrary and capricious because of the danger to health of members of the community caused by air pollution.
-1-
The pertinent provisions of the City Charter (Sections 3-113(1) and 3-113(2) read as follows:
“Submission of Ordinances to the Mayor.
“(1) Every ordinance adopted by the Council shall be signed by the presiding officer and presented promptly by the Clerk to the Mayor.
“(2) The Mayor within ten calendar days of receipt of an ordinance shall return it to the Clerk with or without his approval, or with his disapproval. If the ordinance has been approved it shall become law upon its return to the Clerk; if the ordinance is neither approved or disapproved it shall become law at twelve o’clock noon on the tenth calendar day after its adoption; if the ordinance is disapproved the Mayor shall submit to the Council through the Clerk a written statement of his reasons for his veto. The Clerk shall record upon the ordinance the date of its delivery to and receipt from the Mayor.”
Ordinance No. 2671 M.C.S. was adopted by unanimous vote of the City Council on Thursday, August IS, 1963. On that day Mayor Shiro was out of the city and Councilman-at-Large Di Rosa was Acting May- or, having been appointed by Mayor Schiro to serve in his absence. (See Section 4-204 (2) of the City Charter). Councilman-at-Large Fitzmorris was President of the Council, and presided at the Council Meeting on that day.
Several other ordinances adopted by the Council on August 15, 1963 were signed by Councilman Fitzmorris and transmitted to the Acting Mayor on that same day. However, Councilman Fitzmorris delayed signing Ordinance No. 2671 M.C.S. until Monday, August 19, 1963. He testified frankly that his reason for holding the ordinance from Thursday to Monday was that he knew Councilman Di Rosa was against the ordinance and would veto it as Acting Mayor if it were transmitted to him. On the other hand, he testified, Mayor Schiro had publicly expressed his approval of the plan and had advised the Council that he had studied it and thought it was in the best interest of the City.
*148 Mayor Schiro returned to the city on Monday, August 19, 1963 and on that day Councilman Fitzmorris signed the ordinance as presiding officer of the Council and transmitted it to Mayor Schiro.
Mayor Schiro approved the ordinance on Friday, August 23, 1963 and returned it to the Council in due course.
Plaintiffs contend that the Ordinance is null and void because it was not “presented promptly” to the Mayor as required by Section 3-113(1) of the Charter.
Defendants point out that the charter does not specify the time within which the president of the Council shall sign an ordinance and that after it was signed the ordinance in question here was immediately presented to the Mayor by the Clerk.
Defendants contend moreover, that the word “promptly” has a relative meaning (citing State v. Southern Cotton Oil Co., 164 La. 225, 113 So. 825, 826; Jefferson Cotton Oil Co. v. Archibald Gin Co., 3 La. App. 391, 393; 73 C.J.S. pp. 130-131) and that the interval of four days (two of which were a Saturday and a Sunday) between Council adoption and presentment to the Mayor was prompt, since it in no way affected the charter requirements admittedly designed only to allow the Mayor time for consideration. They further contend that if the ordinance could be considered not to have been presented promptly to the Mayor, such fact would not invalidate the ordinance for the reason that the requirement for prompt presentation has been uniformly held to be directory and not mandatory, unless the statute specifically imposes such fatal consequences (citing 82 C.J.S. verbo Statutes § 48, page 77; State ex rel. The Attorney General v. Mead, 71 Mo. 266; State ex rel. Smith v. Ryan, 123 Kan. 767, 256 P. 811, 812).
On the other hand, plaintiffs argue that since Section 3-113(2) provides that upon the Mayor’s failure to return an ordinance to the Council within ten days after its receipt it becomes law on the tenth day after its adoption, the ordinance necessarily must be presented to the Mayor on the day of its adoption in order to give full effect to the charter provisions.
We do not find it necessary under the facts and circumstances presented by this case to discuss the various contentions of counsel. The ordinance was regularly adopted, transmitted to and approved by the Mayor within the ten days charter requirement, rendering moot the whole issue raised by plaintiffs.
“Some constitutional provisions as to the signing of a bill by the presiding officer of each house require such signing immediately after their titles have been publicly read, or within a specified time after passage. It has been held that a failure on the part of the presiding officer to sign the bill within a stipulated time after its passage does not invalidate an act thereafter duly authenticated and approved by the Governor." 50 Am.Jur. Verbo “Statutes” Sec. 93, page 101.
Neither Mayor Schiro nor Councilman Di Rosa is here complaining that insufficient time was given the Mayor for consideration of the ordinance and we know of no legal right of plaintiffs which has been violated. We hold, as did the Trial Court, that Ordinance No. 2671 M. C.S. was validly adopted.
-2-
Ordinance 2671 authorized and directed the conversion of the street car transit system on Canal Street to a diesel bus system, and in connection therewith authorized the widening of the Canal Street roadways and other related improvements in order to facilitate automobile and bus traffic. It further provided that all of the work was to be done by New Orleans Public Service, Inc. at its own expense.
Plaintiffs contend that the action of the City in authorizing a public utility to undertake, at its own expense,- the *149 widening and improvement of a city street is an unauthorized delegation of the City’s authority to repair, change or alter the streets, and is ultra, vires. Plaintiffs’ argument is that the City Charter by giving the Council the power, in Section 4-1602(1), to grant franchises “for the use of streets”, precludes the Council from allowing the franchise grantee to perform any work on the city streets, because, they argue, that would not he a “use”. But it is clear that a grant of the “use” of the streets may be conditioned as the City may see fit provided the conditions are not forbidden by law. See 12 McQuillan, Municipal Corporations, Sec. 34.36 page 123.
The City in Article II of the Home Rule Charter (Sections 2-101 et seq.) is granted not only the powers specifically enumerated but also every power previously vested in the City together with every power granted to any other municipality. That the City of New Orleans is fully empowered to enter into any contract in furtherance of its corporate objects cannot be disputed. It likewise cannot be denied that the City has the authority to repair, pave, change and alter its streets and that it may enter into contracts for the performance of the work.
Ordinance No. 2671 M.C.S. is no more than a contract between the City and New Orleans Public Service, Inc. (See State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665, 669) and the only real difference between this contract and one let for the same work by public bidding is that the Canal Street improvement will be accomplished at no cost to the City.
The performance of work on the City streets by a public utility is not unusual. Thus in Schmitt v. City of New Orleans, 48 La.Ann. 1440, 21 So. 24 and in City of New Orleans v. Steinhardt, 52 La.Ann. 1043, 27 So. 586, 46 L.R.A. 193, it was quite clear that the railroad companies in those cases were obligated by their franchises to maintain the streets on which they operated. McQuillan says this:
“ * * * But the requirement is general that, as a condition to the grant of the franchise to maintain tracks and operate cars in the public streets, the grantee or its successors shall pave the streets between the rails of its tracks and for a certain distance outside of its tracks and also between its tracks, where double tracks are laid. So the franchise may preserve the right to forfeit it for any failure to pay the cost of paving between the tracks. Sometimes the whole street from curb to curb is required to be paved and kept in repair by the railroad company. * * * ” (emphasis supplied) 12 McQuillan, Municipal Corporations, Section 34.39, page 142
In the instant case, there was no delegation of authority over the streets to New Orleans Public Service, Inc. Sections 4 and 5 of the ordinance spell out in detail the construction work which is authorized to be done by Public Service, leaving only the ministerial function of performing the work. It must be emphasized that all of the work is to be performed under the supervision of the City Department of Streets and according to plans and specifications approved by that Department. In-doing the work Public Service will be acting merely as an agent of the City. See Connell v. Yazoo & M. V. R. Co., 141 La. 701, 75 So. 652.
We hold that the City was fully vested with the power to grant the permit for bus operations on Canal Street and to contract with Public Service to undertake the necessary improvements to that street.
-fi-
In their petition plaintiffs alleged that the operation of diesel busses on Canal Street would create various nuisances, including property damage and devalua *150 tion, traffic hazards, air pollution detrimental to health, etc. Plaintiffs devoted most of the two day trial in an effort to prove that diesel busses constituted a nuisance in that they polluted the air and were dangerous to the health of members of the community. The Trial Judge found as a fact that the operations by New Orleans Public Service, Inc. under the ordinance will not create “various nuisances” or be detrimental to the health of any persons, citizens or visitors to the City. On the basis of the testimony adduced at the trial we are of the opinion that the finding of the Trial Court is correct.
It is not the province of the Courts to decide whether an ordinance is wise or unwise. That decision addresses itself solely to the legislative body. A court of equity cannot substitute its judgment for that of the City Council unless it is shown that the Council acted arbitrarily or capriciously.
Ordinance No. 2671 M.C.S. under attack here was introduced under Calendar No. 2862 on June 27, 1963 after thorough study by all of the interested departments of the City, including the Department of Utilities, the Department of Streets, the Division of Traffic Engineering of the Parkway Commission, and the Sewerage & Water Board. A public hearing, pursuant to the charter, was scheduled and held on August 13, 1963 at which meeting the various agencies named above and the City Planning Commission appeared and voiced their approval. The ordinance conforms to the “Major Street Plan” of the City Planning Commission. The evidence shows conclusively that the action of the Council in adopting the ordinance was neither hasty, nor arbitrary nor capricious.
For the foregoing reasons the judgment appealed from is affirmed, costs of both courts to be borne by plaintiffs-appellants.
Affirmed,