## IDEAL LAUNDRY CO. v. CITY OF DALLAS.

### No. 11516.

Court of Civil Appeals of Texas. Dallas.

Sept. 23, 1933.

Rehearing Denied Nov. 4, 1933.

Touchstone, Wight, Gormley & Price, of Dallas, for appellant.

Hugh S. Grady, W. Hughes Knight, A. J. Thuss, and H. P. Kucera, all of Dallas, for appellee.

BOND, Justice.

On December 10, 1930, the city of Dallas filed, in the county court at Law No. 2 of Dallas county, its petition seeking condemnation of certain property of the Ideal Laundry Company, situated on Ross avenue, in said city, as necessary to the widening and otherwise improving of said street.

Commissioners, being duly appointed, filed in said court an award showing the assessment of damages alleged to accrue to the property owner by reason of such condemnation. The city of Dallas, not being satisfied with the award, appealed to said court; the Ideal Laundry Company filed an answer thereto, also a cross-action, claiming damages in the amount of $70,963.54. The answer and cross-action are both full and complete in stating appellant's position as to its rights and damages, based on an implied, if not an express, contract, with the city, binding the

city to pay a reasonable compensation for alterations made to its building to conform to the city's demands. The city of Dallas interposed a general demurrer, a plea of jurisdiction, and special exceptions to the cross-action. The court overruled the general demurrer and plea of jurisdiction, sustained all special exceptions, and struck out the essential and fundamental allegations of the cross-action. Appellant declining to amend, judgment was rendered dismissing the cross-action. Appellant appealed. The unique feature of this appeal is the action of the trial court in striking out appellant's cross-action.

In 1927 the city of Dallas amended its charter by authorizing the issuance of bonds in the sum of $5,700,000, for the purpose of paying the city's share, as may be determined by law, in the establishment of building lines, street openings, and widenings, and for the building of underpasses and overhead crossings. No particular street was designated in the amendment, and nothing appears as to what streets were in contemplation of improvements by the city authorities. The amendment is a general authorization for street improvements, thus leaving to the city commission the discretion necessarily imposed on city officials. After the adoption of the amendment, the city commission did determine to improve Ross avenue, and, in furtherance of its survey and plans for such improvements, instituted proceedings for the widening and straightening of said street, under article 1201 et seq., R. S. 1925.

Appellant alleges in its petition for cross-action that the city of Dallas, about 1915, through its officials, its engineering department, and other agencies, began to make exhaustive surveys and plans to widen a large number of streets in said city, and, to facilitate these plans, auxiliary committees and commissioners (such as Kessler plan association, city planning commission, and the Ulrickson committee) were appointed, and each of these unofficial associations recommended, among other street improvements, the widening of Ross avenue, and, on December 15, 1927, the city commission submitted to the electorate of the city the recommendations, and, as a result thereof, the city charter was amended, embodying in general terms the recommendations of said associations, thus enabling the city of Dallas to carry out the specific plans and surveys for the said improvements, the amendment being section 327 of the city charter, as follows: "The City of Dallas shall have authority to issue coupon bonds of the City of Dallas in the sum of $5,700,000.00 for the purpose of paying the city's share that may be determined by law, establishment of building lines, street openings and widenings, and building of underpasses and overhead crossings."

Appellant's petition for cross-action further alleges that all the abutting property owners on Ross avenue understood, at the time the proposed amendment was submitted to the electorate and the result declared, that the city of Dallas had been given authority to issue bonds to provide for the widening of Ross avenue, and that Ross avenue would be widened 15 feet on either side; that the city officials, understanding that such was the purpose of said amendment, so informed the owners of property abutting on said street; that the new building line was established 14.5 feet, moved back from the original building line, and that all applicants for building permits, who sought to build on the original building line, were thus warned that the part of such building extending beyond the new building line would be condemned just as soon as the city authorities could formulate plans for carrying out the recommendations adopted by said city; that, realizing that such acts of the city and its officials were in contemplation of such improvements (casting a cloud upon its title and rendering its property unsalable), and believing that, since it would have to dismantle the front of its building and restore same on the new building line, and further believing that it would save cost and expense to the city by proceeding in such dismantling and restoration, at such time and in such manner as would least interfere with the operation of its plant, appellant, by its managing personnel, did, on October 2, 1928, write a letter to R. E. Burt, then mayor of Dallas, substantially as follows: " * * * In contemplation of the working out of these plans, which we enthusiastically favor, we have decided to anticipate the city's work upon this improvement, and to set our building back and remodel the front thereof to the new building line, which the City will give us. * * * The improvements we contemplate are being made by us purely in contemplation of the street widening project and that if this project was not in view improvements would not be made by us, as the plant and building in its present condition is entirely suitable for all future operations. * * * We reserve the title to that part of our real estate from which we move our building back, and we reserve our full right to have off-set, at the proper time, against any assessments made against us for benefits, the actual and reasonable value of the ground we vacate, and the actual and reasonable cost to us of moving our building back and replacing the front thereof, as well as the loss and damage sustained by us in rearranging our machinery to meet the new conditions, as well as in the operation of our plant during the building period."

Burt answered substantially as follows: "In going ahead with this work so far in advance of the actual widening of the street you are manifesting an excellent spirit of cooperation which is deeply appreciated by this administration. The widening of Ross

Avenue is one of the most important street projects which we now have under contemplation and we hope to be able to start work within a year."

Appellant's petition for cross-action further alleges that, the city of Dallas having thus inchoately appropriated its property, having determined upon the new building line, and the mayor of the city of Dallas having answered its letter, it then and there elected to co-operate with said city, and anent thereto secured from the city department the survey, and on such line did, prior to September 1, 1929, set its new building back and remodel the front thereof, for which it asked damages to the amount of the costs for making necessary repairs, less whatever amount of benefits would accrue from the widening of the street, amounting to the sum of $70,963.54.

In condemnation proceedings, damages growing out of a breach of contract, either express or implied, cannot be recovered by the owners of the land, or even be considered by the court for any purpose. The owners of the land so damaged by the breach of such contract may have his recourse in a court or tribunal having jurisdiction of the amount claimed, in a proper proceedings instituted for that purpose. The right of eminent domain involves a determination of such matters as the value of the estate proposed to be taken and the value of such consequential damages as may reasonably arise out of and are incident to the act of taking private property for public use.

Appellant's interpretation asserted that the acts and conduct of the city authorities, in adopting the views and recommendations of the Ulrickson committee, Kessler plan association, and other unofficial bodies, for the improvement and betterment of the city of Dallas, as being a binding contract, does not give rise to a claim that such contract, or the consequential rights flowing therefrom, arise in the controversy as to the condemnation of the owner's land. Jurisdiction granted to county courts, by the laws of this state, to hear and determine condemnation suits by necessary implication, includes the right to try and decide only questions which may fairly arise and are relevant to the right of eminent domain. Jones v. M.-K.-T. Ry. Co. (Tex. Civ. App.) 14 S.W.(2d) 357. Appellant's alleged damages arose more than two years prior to the beginning of the condemnation proceedings, therefore its cause of action, if any it has, is independent of such proceedings, and not relevant to the issues involved in the proceedings.

In condemnation, the special commission appointed to award damages to the owner of the property and the county court, on appeal, are derogated by law in their investigation to the value of the estate which was taken at the time of the award, and the whole investigation is for the purpose of determining that value. That being the issue involved here, they could not, without going beyond their jurisdiction, receive evidence or make adjudication for damages or claims accruing before or after the taking of the land. If the acts and conduct of the city authorities gave rise to the belief that appellant's property was to be condemned, and on account thereof induced it to anticipate or speculate on the effect thereof, causing it to spend money or labor in making the improvements in advance, their remedy, if any exists, must be sought in some other proceedings.

In the case of Parks v. City of Waco (Tex. Civ. App.) 274 S. W. 1006, 1007, the court held: "The proceeding to condemn land for public use is special in its character, and its validity must depend upon a compliance with the law authorizing it. Nothing is to be presumed in favor of the power of such a special tribunal, and it is incumbent upon one seeking to show right under its decree to show that the court had jurisdiction to render it."

The special and particular nature of condemnation is exemplified in a line of authorities in this state, denying the right of landowners to inject into the controversy anything other than the right existing and the value of the property appropriated. In the case of Jefferson County Traction Co. v. Wilhelm (Tex. Civ. App.) 194 S. W. 448, the court held that matters sounding in tort cannot be joined in a condemnation matter; such also is the holding in the case of City of San Antonio v. Fike (Tex. Civ. App.) 211 S. W. 639; Ft. Worth & D. S. P. Ry. Co. v. Gilmore (Tex. Civ. App.) 2 S.W.(2d) 543; Stakes v. Houston North Shore Ry. Co. (Tex. Civ. App.) 32 S.W.(2d) 1110; Throckmorton County v. Howsley (Tex. Civ. App.) 28 S.W. (2d) 951, 952. In the last-cited case the court said: "It is well settled by the decisions of the courts of this state that, in a condemnation proceeding, damages cannot be recovered, on appeal in the county court by the owner of land, which have accrued on account of the improper or negligent construction of the improvement pending the appeal to that court. For such damages the owner has recourse to the proper court having jurisdiction of the amount claimed in a separate suit instituted for that purpose, but he cannot recover for such damages in the condemnation proceedings. The reason for this rule is apparent upon reflection."

We conclude that the county court was without jurisdiction of appellant's cross-action. The matters of clearing up of the land to be condemned and setting the buildings thereon back before the filing of the condemnation suit, in anticipation of the improvements of the street and the appropriation of the property by the city, are not such

matters reviewable in condemnation suits. The trial court would have been justified in sustaining appellee's plea to the jurisdiction; however, sustaining appellee's special exceptions to all the essential and substantial portions of appellant's petition for cross-action, and striking out the element of damages incident to such allegations, is tantamount to the conclusion that the cross-action is not germane to the condemnation suit. The case having been properly disposed of, the judgment of the lower court is affirmed.

Affirmed.