**GULF, COLORADO AND SANTA FE RAILWAY COMPANY, Appellant,**

v.

**H. M. PAYNE et ux., Appellees.**

No. 15857.

Court of Civil Appeals of Texas.

Fort Worth.

Dec. 13, 1957.

Rehearing Denied Jan. 10, 1958.

Wigley, McLeod, Mills & Shirley, Galveston, Fred H. Minor, John Sullivan, and T. B. Davis, Denton, Burford, Ryburn, Hincks & Ford, and Robert E. Burns, Dallas, for appellant.

Coleman & Whitten, and Royce Whitten, Denton, for appellees.

MASSEY, Chief Justice.

This is a railroad condemnation suit. The Gulf, Colorado and Santa Fe Railway Company appealed from the judgment in favor of the landowners.

Judgment affirmed.

The Railway Company will be hereinafter termed condemner, and the landowners termed condemnees.

Condemnees' land is located about one mile west of the city of Denton in Denton County. The portion taken was 2.80 acres, with condemnees' remaining land approximating 74.5 acres. The land taken was adjacent to the portion of the land on which condemnees' home, barns, chicken house, water well and overhead water storage tank were located. The balance of condemnees' land was unimproved property used primarily for grazing livestock. Six or seven years prior to time of condemner's taking, condemnees had deeded approximately ten acres of land to the State of Texas for highway purposes, dividing their land remaining into two tracts. Both tracts, however, were used for grazing purposes. Indeed, the acreage deeded to the State was used for grazing purposes as well, for the State did not begin construction of the highway until after date of the condemner's taking.

Condemnees' home fronts on a much older highway. This is Highway 24 which runs east and west. Condemner's railroad runs generally north and south and as of the time of the trial had already been completed. The railroad crosses Highway 24 by an overpass constructed for the purpose as part of the over-all railroad construction work. On either side of the concrete of the overpass earth had to be moved in, tamped and shaped to provide a substantial support for trains moving north and south over condemner's railroad. The construction of this and the overpass involved some eight or nine months, shortly after which condemner placed the railroad in operation on a regular schedule.

The first five points presented on appeal by condemner are directed to the admission of testimony bearing upon the dust, noise, discomfort and inconvenience to condemnees resulting from the construction work carried on by condemner before the railroad was placed in operation, and also bearing upon the effects of the dust incident thereto upon the paint and wallpaper in their house and upon their clothing. Before the testimony in the trial of the case

was begun, both parties and the court were well informed that the condemnees would introduce testimony to this effect under the theory that it was proper in the demonstration of facts and circumstances affecting the value of condemnees' remaining 74.5 acres. Condemner attempted to prohibit condemnees from introducing such testimony by the filing of a motion *in limine* for an instruction by the court to this effect. This was overruled. Condemner adequately protected itself in preservation of objection and exception to all the testimony subsequently introducted bearing upon the matter.

■ Actually condemnees seek, as to the land remaining after condemnation of a part thereof, damages which would be recoverable under the provisions of the Constitution of Texas, Art. 1, sec. 17, Vernon's Ann.St., specifically as same relates to "damage" sustained. Under the established law, and where the party seeking damages predicates his action therefor under proper averments of damages peculiarly sustained to his property on account of injury done thereto pursuant to a construction of railroad facilities on locations adjoining or proximate to property belonging to him, recovery may be had based upon a measure of damages no different from that applicable to an ordinary condemnation case. 16 Tex. Jur., p. 482, "Eminent Domain", sec. 183 (Constructions on, and Excavations of, Street or Road) "—By Railroad"; Judge German's opinion in Daniels v. Wight, Tex. Com.App.1923, 249 S.W. 454; Gainesville, H. & W. R. Co. v. Hall, 1890, 78 Tex. 169, 14 S.W. 259, 9 L.R.A. 298. The distinction to be observed in such cases between personal inconvenience, annoyance and discomfort to occupants of such land—and to the depreciation in the value of the land because of such inconvenience, annoyance and discomfort—is demonstrated in the case of Daniels v. Wight, supra.

■ We see no reason why the same issues could not be tried out in a condemnation case, nor indeed why they would not

be more properly tried as part and parcel thereof than in some separate proceeding, where a condemnation suit must be tried in any event. The measure of damages is the same. And under the circumstances the trial of two separate causes of action with double consumption of time and expense, when all of the damage actually was occasioned on account of the public improvement project and in pursuance thereto, would be a hardship on all parties, as well as useless and unnecessary. Glade v. Dietert, Tex.1956, 295 S.W.2d 642, 646.

And we are of the opinion that Judge German's later opinion in the case of State v. Carpenter, 1936, 126 Tex. 604, 89 S.W.2d 194, constitutes authority holding such evidence admissible and proper for consideration by the trier of fact in a condemnation case. For example, on page 197 (in 89 S.W.2d) it is stated that one of the two necessary elements determinative of damages sustained by the property owner in a condemnation case is "the damages occasioned to the remainder of the tract by reason of the taking and *the construction of* the improvement for which it is appropriated." In respect to the ascertainment of the market value of the remainder of the property owner's tract after a portion thereof is taken in condemnation, it is further stated near the end of page 197, "There may possibly be items of special damages which may not be accurately reflected in the difference between the market value before and the market value after, *but everything which affects the market value of the land itself, having due regard for past and probable future injuries, may be accurately reflected by ascertaining the difference in value, when all the legitimate testimony is properly submitted to the jury for consideration.*" Thereafter, on page 198, it is stated, " 'In estimating this item of damage (enhancement or diminishment of value to remaining property after some property taken), the effect of the *construction* and *operation* of the road upon the market value of the property is the measure.' " Thereafter, and on the same page, the cases

of abutting owners, within which class fall most of the cases cited in Daniels v. Wight, supra, are referred to and synonymity inferentially noted. (Emphasis supplied.)

Had condemnees in the instant case abandoned any attempt to show the special damage due to condemner's construction and later filed suit after condemnation litigation had been completed, we have little doubt that the defendant railroad in such subsequent suit could logically contend that the doctrine of *res adjudicata* applied.

■ We hold that in the instant condemnation case the construction work was a part of the "uses" to which the property taken was intended to be subjected and was subjected, and that under the evidence such work resulted in peculiar damages to condemnees' remaining property during the period necessary for the work completion. We further hold that by reason thereof condemnees sustained depreciation in the market value of their remaining land under proof of evidentiary matters properly admitted in the demonstration of circumstances. West v. State, Tex.Civ.App., Eastland, 1941, 150 S.W.2d 363.

■ Condemner predicates a point of error upon the trial court having permitted testimony from condemnees' witnesses to the effect that the location and construction of the railroad caused damage to that portion of condemnees' land lying east of the State highway property which bisected such land. As previously noted, approximately ten acres of condemnees' land had been deeded to the State of Texas some years previously for highway purposes. Such ten acres bisected condemnees' property so that some of it was east and across the said ten acre strip belonging to the State. The evidence established that condemnees continued to devote their property lying east of said strip to grazing purposes as well as their remaining property lying west thereof. In other words, though condemnees' property was divided by the highway strip into separate parts, they were

nevertheless devoted by the condemnees to a single use. Since they also lie in such proximity as would be in effect united by that use into a single property, they were properly regarded as a whole for the purpose of assessing damages under general rules of law. City of Denton v. Hunt, Tex. Civ.App., Fort Worth, 1950, 235 S.W.2d 212, writ refused, n. r. e. See generally the discussion of the question in 6 A.L.R. 2d at pages 1197 through 1237. There was sufficient evidence to support the jury's findings as to the value of condemnees' entire 74.5 acres remaining, considering the divided tracts as an entirety and singular, and therefore condemner's additional contention upon the insufficiency of the evidence is overruled, it being predicated wholly upon the impropriety of considering the two tracts as a unit for valuation purposes.

Condemner's last point contends that there was insufficient evidence to support the jury's answer to Special Issue No. 1 in the court's charge, which answer found that the market value of the 2.80 acre tract taken by condemner, considered as separate land, was in the amount of $2,800. Valuation per acre as to such tract was $1,000.

 Condemnee Payne testified that the tract was worth "about $2,800" on the date of taking. Condemnees' expert witnesses' testimony about such value varied from $400 per acre to $600 per acre. Hence, such condemnee, testifying as the owner, placed a valuation upon it which was $400 per acre higher, or a total of $1,120 higher, than his own expert witnesses' greatest valuation. The jury based its answer to the issue upon condemnee's testimony.

We overrule condemner's contention. It is to be remembered that the point of error contends solely that there was "not sufficient evidence" to support the jury's answer. There was no objection to the condemnee's testimony in this respect. In addition to the fact that he was the owner of the land, he qualified himself otherwise by statements to the effect that he was ac-

quainted with the market value of his land. We are of the opinion that standing alone such testimony was of sufficient probative force and effect to support the answer returned by the jury. See 19 Tex.Jur., "Expert and Opinion Evidence", pp. 135–138, sec. 92, "Function of Trial Court", p. 213, sec. 139, "Where Witness is Owner of the Property", and pp. 244–246, sec. 159, "Qualification of Witnesses".

Judgment is affirmed.