R. G. STOREY and Charles P. Storey, Independent Executors and Trustees of the Estate of Genevieve W. Ware, Deceased, Relators,

v.

Honorable Fred Red HARRIS, Judge, County Court at Law No. 3, Dallas County, Texas, and City of Irving, Respondents.

No. 17784.

Court of Civil Appeals of Texas, Dallas.

Dec. 29, 1971.

Rehearing Denied Jan. 28, 1972.

Donald A. Swanson, Jr., Storey, Armstrong & Steger, Dallas, for relators.

Wm. A. McKenzie, McKenzie & Baer, Dallas, Don J. Rorschach, City Atty., City of Irving, John F. Boyle, Jr., English, Deatherage & Boyle, Irving, for respondents.

BATEMAN, Justice.

The only question presented by this application for mandamus is whether in a condemnation proceeding the objections of the property owner to the commissioners' award of damages were timely filed.

The relators are the owners of the property sought to be condemned by the City of Irving, a "home rule" city. The special commissioners filed an award to which relators wished to object and thus obtain a trial in court as to the amount of their damages. Their objections were filed within the time specified by Article 3266, subdivision 6 *, but not within the ten days allowed by Article 1206, subdivision (d). The Honorable Fred Red Harris, Judge of the County Court at Law No. 3 of Dallas County, Texas, in which the report of the commissioners and the objections were filed, dismissed the objections and adopted the award of the commissioners as the judgment of the court pursuant to subdivision (d) of Article 1206.

Title 52, comprising Articles 3264–3271, entitled "Eminent Domain," is said to

---

\* All Articles mentioned in the opinion will be found in Vernon's Annotated Civil Statutes of Texas; all Rules mentioned will be found in Vernon's Texas Rules of Civil Procedure; and all italics in the opinion are ours unless otherwise indicated.

"cover the subject of eminent domain," and to constitute "a complete system in itself." City of Houston v. Derby, 215 S.W.2d 690, 692, 693 (Tex.Civ.App., Galveston 1948, writ ref'd).

Subdivision 6 of Article 3266 provides that if either party be dissatisfied with the decision of the commissioners,

" * * * such party may, on or before the first Monday following the 20th day after the same has been filed with the county judge, file his objection thereto in writing, setting forth the grounds of his objection, and thereupon the adverse party shall be cited and the cause shall be tried and determined as in other civil causes in the county court."

As stated, the relators filed their objections to the decision of the commissioners within the period so specified.

Chapter 17, of Title 28, Articles 1201 et seq., entitled "Condemnation for Highways," also gives cities having more than one thousand inhabitants (and the City of Irving is in this category) the power to condemn property to "lay out, open, establish, widen, straighten, or extend any highway within its limits." Article 1206, entitled "Condemnation commission," contains general provisions, and the first paragraph of subdivision (d) thereof is:

"Any party affected by the decision of said Commission who shall be dissatisfied therewith, shall, within ten days after the filing of said report with said Judge, file in his Court in opposition thereto, setting forth in writing the particular cause or causes of objection, and thereupon the adverse party or parties shall be cited and said cause shall be tried and decided as other civil causes in said Court. If no objections are filed with said Judge within said time, he shall cause the said report to be entered in the Minutes of his Court and make the same the judgment thereof, and may issue the necessary process to enforce same."

For many years both statutes provided that objections to the decision of the commissioners should be filed within ten days after the filing of the decision. However, in 1961 the 57th Legislature amended subdivision 6 of Article 3266 to increase the time to twenty days; and in 1965 the 59th Legislature rewrote subdivision 6 to read as it now appears. Unfortunately, and perhaps through oversight, no change was made in the ten-day rule of subdivision (d) of Article 1206.

The relators contend forcefully in their briefs and in oral argument that the circumstances surrounding the institution of these condemnation proceedings, and the words used by the City Attorney indicate an intention on the part of the City of Irving to condemn relators' property under the general Eminent Domain statutes (Articles 3264 et seq.), and that the city's interposition of the ten-day rule of Article 1206 is an afterthought. However, we do not think this question may properly be decided on the basis of the mental processes or intention of the officials of the City of Irving as to which of the two sets of statutes should govern the proceeding unless such intention appears in the proceedings instituted by them. The clear purpose of the proceeding was to take from relators their real property for public use, and unless there was something on the face of the proceedings or the notice to relators to indicate otherwise, we think the relators were well within their rights to consider the proceeding as one filed under the general condemnation statutes (Articles 3264 et seq.) and file their objections within the period allowed thereby.

█ The City's original Statement for Condemnation did not state that it was filed under any particular statute; it merely alleged that under its Home Rule Charter it had the power to appropriate and take any private property for the purpose of opening, establishing, extending, constructing and maintaining streets and freeways within or without the city, and

"has the power to appropriate and take any private property within or without said city for any municipal purpose that may be deemed necessary by the governing body of said city for the use and benefit of the public and the inhabitants of said city," and that the city had determined the necessity for taking the relators' property "for the following public purpose or purposes, to wit: parking and off-ramp access street purposes."

The Order Appointing Commissioners, using the language of Article 3264, appoints three disinterested freeholders of Dallas County, Texas as "*Special* Commissioners to assess the damages in accordance with law." (Articles 1201 et seq., speak only of "commissioners" and "commission.") Each of them filed an oath reciting that he had been appointed "a *Special* Commissioner." The Order Setting Hearing Before Commissioners spoke of them as "*Special* Commissioners" and they signed the same as such. The Notice of Hearing served on relators contains no language to indicate that the proceeding was filed under any statute other than Articles 3264 et seq. The Award of Commissioners speaks of them as "*Special* Commissioners" and they signed the same as such. Moreover, the city's home rule charter (of which we take judicial notice under Article 1174) in Section 10, under the heading "Right of Eminent Domain," provides in part:

"*In all cases* where the city seeks to exercise the power of eminent domain it shall be controlled as nearly as practicable by the laws governing the condemnation of property *by railroad corporations* in any such cases * * *."

We know of no "laws governing the condemnation of property by railroad corporations," and none has been called to our attention, except Articles 3264 et seq.

The very first sentence of Article 3264, entitled "Procedure," begins:

"The exercise of the right of eminent domain shall *in all cases* be governed by the following rules:"

It is also noted that subdivision (b) of Article 1206 provides that notice of the hearing before the commission shall be given by publication in a newspaper of general circulation, in addition to service of notice on the owners, lienholders, etc. No such requirement of publication of notice is found in Articles 3264 et seq., and no evidence of such publication appears in the record before us.

In our opinion, therefore, any reasonable person served with notice similar to that served on relators herein, and examining all of the said proceedings filed up to the time of such notice, as well as the city's home rule charter, would be fully justified in regarding the proceedings as having been instituted under and governed by Articles 3264 et seq. That being true, relators should be held to be within time in filing their objections.

To hold otherwise would deny relators the right to have a jury determine the value of their land because their objections to the award, while timely filed under one statute, were not timely under another. This harsh result should be avoided if possible, and we think it is possible and entirely proper to avoid it, not only on the grounds mentioned above, but also under the rule announced in City of Houston v. Derby, 215 S.W.2d 690, 693 (Tex.Civ.App., Galveston 1948, writ ref'd), as follows:

"The protection which the law has erected for the benefit of the citizen as against the exercise of the power of condemnation should be liberally construed. Stated otherwise, the power of eminent domain must be strictly construed against those corporations and arms of the State vested therewith."

To the same effect, see 26 Am.Jur.2d, Eminent Domain, § 18, p. 659; Coastal States Gas Producing Co. v. Pate, 158 Tex. 171, 309 S.W.2d 828, 831 (1958).

852

The first sentence of Article 1201 is:

"Cities having more than one thousand inhabitants under the preceding Federal census *may proceed* in accordance with the provisions hereof, independently of and without reference to any other applicable law or charter provision, present or future, *which, however, shall remain in force as alternative methods.*"

Thus, the City could have proceeded under either set of statutes, and since it was not made clear which was being followed the property owner was entitled to act under the statute providing the longer period in which to file objections.

The writ of mandamus is granted and the judge of the County Court at Law No. 3 of Dallas County is directed to set aside the order of August 6, 1971, dismissing the objections to the award of the commissioners and making the said award the judgment of the court, and to set the cause for trial on its merits.

CLAUDE WILLIAMS, C. J., dissents and files opinion.

GUITTARD, J., concurs and files opinion.

GUITTARD, Justice (concurring).

I concur in the opinion of Justice Bateman. I agree that relators' objections were timely because all of the proceedings up to the filing of such objections were entirely consistent with the procedure prescribed by the general condemnation statutes, Articles 3264 et seq.

The situation would be different if Articles 1201 et seq. prescribed an exclusive procedure for the city to condemn the property in question. If that were the case, Articles 1201 et seq. would control and the general condemnation statutes would be applicable only to the extent that the more specific statutes make reference to them. However, that is not the case,

and the city does not contend that it is. The city concedes that it could condemn this property either under Articles 1201 et seq. or under the general condemnation statutes in conjunction with the authority granted home-rule cities by Tex.Rev.Civ. Stat.Ann., Article 1175, § 15 (1963). As Justice Bateman points out, Article 1201 does not provide an exclusive procedure, but expressly provides that other applicable laws and charter provisions "shall remain in force as alternative methods."

The city may elect to proceed one way or the other, or, possibly, it may proceed in compliance with both, but it should not be permitted to delay specific invocation of one statute or the other until more than ten days after the award is filed, and then take the position that the landowners' exclusive remedy was to file his objections within the ten days prescribed by Article 1206. So long as the city has made no binding election to proceed under one statute or the other, the landowner, likewise, may pursue the remedies available under either. Consequently, in my opinion, relators have a clear right to a trial in the county court at law.

BATEMAN, J., joins in this opinion.

CLAUDE WILLIAMS, Chief Justice (dissenting).

I am unable to agree with my brethren that the facts and applicable law justify the issuance of a writ of mandamus against the trial judge. I therefore respectfully register my dissent.

The facts are simple and the law applicable thereto is clear, express, and mandatory. The City of Irving, a home rule city, having a population of more than 1,000, made a decision to condemn certain property within its limits and owned by relators "for the following public purpose or purposes, to wit: Parking and off-ramp access street purposes." Express authority for such taking had been previously granted cities such as Irving by the state legisla-

ture in 1923 by the enactment of Articles 1201 et seq., Vernon's Ann.Civ.Stat. of Texas. Article 1201, the first in this series, specifically authorized that cities having more than 1,000 inhabitants "may proceed in accordance with the provisions hereof, *independently of and without reference to any other applicable law or charter provision*,[1] present or future, which, however, shall remain in force as alternative methods." Article 1202 grants these cities the right to purchase or condemn and take property to "lay out, open, establish, widen, straighten, or extend any highway within its limits * * *." The term "highway" includes any "street, avenue, boulevard, alley, public place or square, dedicated or to be dedicated to public use." The term "street" includes any street, avenue, alley, highway, boulevard, drive, public place, square or any portion or portions thereof. Article 1220a.

Article 1206 of this series of acts specifically describes the procedure to be taken in condemnation proceedings instituted by the city including the hearing to be had before commissioners. Subdivision (d) of said article spells out the mandatory step that must be taken by any party affected by the decision of the commissioners who shall be dissatisfied therewith. It specifically states that they "shall, within *ten days* after the filing of said report with said Judge, file in his Court in opposition thereto, setting forth in writing the particular cause or causes of objection, and thereupon the adverse party or parties shall be cited and said cause shall be tried and decided as other civil causes in said Court. If no objections are filed with said Judge within said time, he shall cause the said report to be entered in the Minutes of his Court and make the same the judgment thereof, and may issue the necessary process to enforce the same." Again, in another sentence of the same section, another warning is given: "*Upon the expiration of said time for filing objections, the find-*

*ings of said Commission shall become final and binding upon the parties, their heirs, successors and assigns, and shall not thereafter be questioned in any proceeding.*"

Article 1207 under the heading "Statutes Applicable" provides that: "The applicable provisions of the laws relating to eminent domain are made a part of this law, and shall apply to proceedings hereunder, and all parties shall proceed in accordance with and be governed by said articles, *unless otherwise herein provided.* * * *"

Obviously, the phrase "Laws relating to eminent domain" refer to the statutes dealing with eminent domain generally in Articles 3264 et seq., V.A.C.S., However, it is emphasized that the general laws relating to eminent domain do not apply if different provisions thereto are contained in the specific series, Articles 1201 et seq., V.A.C.S. Thus, while the provisions of the general laws relating to eminent domain permit the filing of notice of dissatisfaction of the commissioners' award on the first Monday following the expiration of twenty days from the date of same,[2] it becomes crystal clear that the ten-day provision, provided for in Article 1206(d) constitutes that which is "unless otherwise herein provided" as stated in Article 1207, so that the clear and manifest intent of the legislature was to retain the ten-day notice provision in cases of condemnation by cities as allowed in the Article 1201 series.

While it is true that the original "Statement for Condemnation" filed by the City of Irving did not specifically spell out or state in exact terms that the city was proceeding under Articles 1201 et seq., yet a casual reading of the statement of condemnation so filed by the city would certainly put any lawyer on notice that the city was proceeding under this series of articles rather than the general eminent domain law. Not only did the statement for condemnation spell out that the city was tak-

---

1. Emphasis throughout this opinion, unless otherwise stated, is that of the writer.

2. Art. 3266(6), V.A.C.S.

ing the property for "parking and off-ramp street purposes,"[3] which was specifically provided for by the Article 1201 series, the relators, in the hearing before the commissioners, cross-examined the witnesses offered by the city relative to the use of the land for access street and parking purposes. In such a situation I do not believe that there was any further obligation on the part of the City of Irving to spell out or notify the relators, who were charged with knowledge of the applicable law, that they were proceeding under the 1201 series. I see no evidence of deception or devious tactics on the part of the city, or its attorneys, which could in any way mislead or confuse eminent counsel representing relators concerning the nature and character of the proceedings for condemnation.

Relators' argument that they were misled by the failure on the part of the city to give notice of said hearing before the commissioners by publication in the newspaper as provided by Article 1206 is without merit for the very obvious reason that the record reveals that the attorneys for relators were served with personal notice; that they appeared at the hearing before the commissioners and participated in cross-examining the witnesses and filed no objections relative to any errors or omissions in the proceedings. A similar contention was overruled by the court in Jones v. City of Mineola, 203 S.W.2d 1020 (Tex. Civ.App., Texarkana 1947, writ ref'd), where the court said:

> "The purpose of notice being to advise the parties of the date of the hearing, if they appear at such hearing and are afforded an opportunity to present their rights the kind of notice served upon them, or even no notice at all, becomes immaterial."

Again, the effort on the part of relators to gain solace and comfort because respondents utilized the term "Special Commissioners" instead of the term "Commis-

sioners" is, indeed a trivial and inconsequential thing which does not, in my judgment, justify the assumption that respondents were proceeding under the general eminent domain laws rather than the specific laws provided by the legislature in Articles 1201 et seq. Neither can I comprehend how relators could be misled or deceived by the two terms which are often used interchangeably. Thus, in Jones v. City of Mineola, 203 S.W.2d 1020 (Tex. Civ.App., Texarkana 1947, writ ref'd), the court applied Article 1204, notwithstanding the designation of the freeholders as "special commissioners." The same is true in Ideal Laundry Co. v. City of Dallas, 64 S. W.2d 801 (Tex.Civ.App., Dallas 1933, writ dism'd), where the court referred to "the special commission appointed to award damages" in a condemnation proceeding under Articles 1201 et seq.

The cold fact remains unchallenged that relators did not timely file their objections to the report of the commissioners within the ten-day period specifically prescribed by Article 1206(d), V.A.C.S., which, in my judgment, is the applicable statute which should have been followed. Relators do not attempt to allege or support with proof any excuse or justification for their failure to comply with this specific law dealing with the processes to be followed when cities condemn property for street and highway purposes. On the contrary they seek to evade the effect of their failure to comply with the law by saying that *they thought* that the city was proceeding under the general law of eminent domain and therefore Article 3266, subdivision 6, V.A.C.S., which provides for a twenty-day period for filing objections to the commissioners' report, was applicable. This statute cannot be applicable for the simple reason that the legislature in Article 1207, V.A.C.S., provides that the general laws relating to eminent domain shall apply to the proceedings where cities condemn property, *unles; otherwise herein provided.* The legislature

---

3. In McCraw v. City of Dallas, 420 S.W. 2d 793 (Tex.Civ.App., Dallas 1967, writ ref'd n. r. e.), we held access or ramp to be a part of street and highway.

has "otherwise provided" and the law remains the same as it was enacted in 1923 and amended in 1930.

I cannot embrace the irrelevant and conclusory statement contained in the majority opinion wherein it is stated: "Unfortunately, and perhaps through oversight, no change was made in the ten-day rule of subdivision (d) of Article 1206." While the legislature did, both in 1961 and in 1965, amend subdivison 6 of Article 3266, V.A.C.S., so as to allow twenty days, or more, for filing objections to commissioners' reports in cases of eminent domain generally, it did not on either of those occasions see fit to amend Article 1206, subdivison (d). I cannot ascribe to the legislature inadvertence or "oversight" in failing to do this thing which the majority says was "unfortunate". I take judicial notice of the fact that the legislature has met in general session many times since 1961 and 1965 and has not to this date seen fit to change, alter or modify the ten-day rule specifically provided for in Article 1206(d). It is elementary that under such circumstances we presume that the legislature knew what it was doing and intended to leave the law as it was without change. It may have had good reason to change the provisions of one law and leave the other law as written. Moreover, the statement contained in the majority opinion has no relevancy for the simple reason that whether the legislature was guilty of oversight or inadvertence is of no consequence simply because the legislature did not change the law and it still remains the law as written in 1923, and amended in 1930. Since it is the law, whether good, bad or indifferent, it should be obeyed by practicing attorneys and recognized by the courts to be effective until changed by the legislature.

I think it must be emphasized that we are here dealing with two statutes, one specific in nature and the other general in its terms. A universal rule of law, recognized in practically all of the states of the Union, as well as in Texas, is adequately stated in 82 C.J.S. "Statutes" § 369, pp. 839–843, as follows.

"For purposes of interpretation, legislative enactments have long been classed as either general or special, and given different effect on other enactments dependent as they are found to fall into one class or the other. Where there is one statute dealing with a subject in general and comprehensive terms, and another dealing with a part of the same subject in a more minute and definite way, the two should be read together and harmonized, if possible, with a view to giving effect to a consistent legislative policy; but, to the extent of any necessary repugnancy between them, the special statute, or the one dealing with the common subject matter in a minute way, will prevail over the general statute, according to the authorities on the question, unless it appears that the legislature intended to make the general act controlling; and this is true a fortiori when the special act is later in point of time, although the rule is applicable without regard to the respective dates of passage."

Justice Long of the Eastland Court of Civil Appeals in Culver v. Miears, 220 S. W.2d 200 (Tex.Civ.App.1949, writ ref'd), in dealing with a similar problem said:

"Under the rules of statutory construction, statutes in pari materia should be construed together and where one statute deals with a subject in general terms and another deals with a part of the same subject in a more detailed way, the two should be harmonized, if possible. However, if there is any conflict the latter will prevail, regardless of whether it was passed prior or subsequent to the general statute, unless it appears that the Legislature intended to make the general act controlling."

To the same effect see Forwood v. City of Taylor, 214 S.W.2d 282 (Tex.Sup. 1948); Franklin v. Pietzsch, 334 S.W.2d 214 (Tex.Civ.App., Dallas 1960, writ ref'd

n.r.e.) ; and Harris County Drainage Dist. No. 12 v. City of Houston, 35 S.W.2d 118 (Tex.Com.App.1931, holding approved).

Pursuant to this rule of law it appears to be conclusive to me that the article providing for a ten-day period of notice, being specific and detailed, should control and prevail over the general article granting twenty days or more for notice of dissatisfaction, even though such general article was enacted by the legislature subsequent to the specific one.

Finally, I think that the writ should be denied because relators have failed to establish a clear and unequivocal right to compel Judge Harris to perform a ministerial duty. Our Supreme Court in Wortham v. Walker, 133 Tex. 255, 128 S.W.2d 1138 (1939), in a classic opinion by Sidney Samuels, Special Chief Justice, stated the law, theretofore expressed by Ferris in his work on "Extraordinary Legal Remedies," p. 228, § 194, as follows:

"Relator, to be entitled to the right [writ of mandamus], must at least have a clear legal right to the performance by respondent of the particular duty sought to be enforced, that is, there must be a clear legal right in relator and a corresponding duty on the part of the person to whom the writ is directed. No intendments are to be indulged. Relator must by averment and proof show an unqualified right to the writ. * * * Absent any clear legal right of relator which it is the duty of respondent to grant, there is no substantial resting place upon which to base the application, for in its final analysis the question for determination is whether the right of the aggrieved party is so free from doubt and the duty of the officer so clear and free from substantial question that an order should issue to compel performance. *The office of mandamus is to execute, not adjudicate. It does not ascertain or adjust mutual claims or rights between the parties. If the right be doubtful, it must be first established in some other form of action. Mandamus*

*will not lie to establish as well as enforce a claim of uncertain merit."*

To the same effect see Holcomb v. Robinson, 118 Tex. 395, 15 S.W.2d 1027 (1929) ; Texas National Guard Armory Board v. McCraw, 132 Tex. 613, 126 S.W. 2d 627 (1939). I submit that the record in this case falls far short of demonstrating that relators have met the condition precedent to the issuance of a writ of mandamus by showing that their claim is without doubt or free of any question. A reading of relators' brief as well as the majority, concurring and dissenting opinions herein will quickly reveal the existence of many doubts and questions concerning the right of relators to avail themselves of this remedy.

Both relators and the majority opinion refer to "harsh results" which would result unless relators are given another chance. It appears to me from a reading of this record that the "harsh results", if there be any, rose from the deliberate and unexplained failure on the part of the relators to comply with the plain letter of an express and explicit statute dealing with the very subject matter in controversy.

I would deny the application for writ of mandamus.