**ARKANSAS LOUISIANA GAS COMPANY, Appellant,**

v.

**Conrad J. ALLISON, et al., Appellees.**

**No. 1459.**

Court of Civil Appeals of Texas, Tyler.

July 30, 1981.

Rehearing Denied Aug. 20, 1981.

---

Tom Bankhead, Bankhead & Davis, Carthage, for appellant.

J. E. Jackson, Carthage, for appellees.

McKAY, Justice.

Our previous opinion in this cause is withdrawn and the following substituted therefor.

This is a condemnation case in which appellant sought to condemn a 40 foot right of way for construction and maintenance of a gas pipeline across appellees' land. Commissioners appointed by the trial court made and filed an award of $10,498, which amount was paid into the registry of the court by appellant. Appellant then appealed the award to the trial court and the cause was tried before a jury.

The jury found that (1) the 5.43 acre strip had a market value of $5,430 immediately before taking and (2) $543 immediately after taking; (3) the market value of the remainder immediately before taking was $918,570, and (4) immediately after taking it was $904,570; (5) the remainder was damaged during construction (6) in the amount of $1,000.

Appellant filed a motion to disregard jury findings in issues 3 and 4 alleging there was

no competent evidence to raise the issue or to support the finding in 3 and alleging there was no competent or probative evidence or insufficient evidence to support the answer to issue 4. The trial court overruled appellant's motion to disregard and granted appellees' motion for judgment on the verdict.

▮ In a condemnation case when a commissioners' award has been made and deposited in the registry of the court and thereafter withdrawn by the landowners, such withdrawal precludes the litigation of any issue except adequate compensation for the land taken. *State v. Jackson*, 388 S.W.2d 924, 925 (Tex.1965); *Hogan v. City of Tyler*, 602 S.W.2d 555, 557 (Tex.Civ. App.–Tyler 1980, writ ref'd n. r. e.)

▮ By its first three points appellant contends that appellee Thomas Allison was not qualified as the owner to give his opinion of the value of the land, that appellee-owner Conrad Allison likewise was not qualified as the owner to give his opinion as to value of the land or the depreciation in value of the land by reason of the taking. We overrule these points.

Thomas Allison, one of the owners, estimated that there were 40 acres taken by pipelines and well locations on the farm and that his estimate of the value per acre of the 40 acres was $30. He further testified that in his opinion all of the remaining 920 acres was worth $1,000 per acre and that the 5.43 acres strip for the appellant's pipeline was worth $1,000 per acre.

Conrad Allison, another owner, testified that the farm was all timber except the well locations and pipelines and that he and his brother made some studies as to the values of property with particular reference to the tract in question. He said his estimate of the value of the 5.43 acre strip was $1,000 per acre, a total of $5,430. He also valued the remainder of 914.57 acres at $1,000 per acre and stated that such remainder lost three or four per cent of the total value and would be worth only $900 per acre after the taking.

▮ Texas courts have held that the owner of property may testify as to the market value of his own property without detailing the basis for his opinion even though he could not qualify to testify as to the value of property of others. *State v. Berger*, 430 S.W.2d 557, 559 (Tex.Civ.App.– Waco 1968, writ ref'd n. r. e.); *Hillin v. Hagler*, 286 S.W.2d 661, 662 (Tex.Civ.App.– Fort Worth 1956, no writ).

It is also the rule in Texas that the opinions of the landowner in condemnation suits are admissible. *City of Rockwall v. Mitchell*, 497 S.W.2d 378, 381 (Tex.Civ.App.–Waco 1973, writ ref'd n. r. e.); *Gulf States Utilities Co. v. Austin*, 439 S.W.2d 411, 413 ("A landowner can testify to facts affecting the market value of his property.") (Tex.Civ. App.–Houston [14th Dist.] 1969, writ ref'd n. r. e.).

The specific complaint of appellant is that the owners were permitted to testify, over objection, as to the damage to the remainder when they were not qualified to do so. The argument is made that the owners must prove the damage to the remainder by showing the nature of the damage, its effect on the various portions of the tract and the relationship of the same to market value, and that they failed to so do as required by *Tennessee Gas Transmission Co. v. Zirjacks*, 244 S.W.2d 837 (Tex.Civ.App.–San Antonio 1951, writ dism'd) and *Texas Electric Service Co. v. Wheeler*, 550 S.W.2d 297, 299 (Tex.Civ.App.–Fort Worth 1976, writ refused n. r. e. with per curiam opinion 551 S.W.2d 341, 342).

As we understand the interpretation of *Zirjacks* and *Wheeler* by the Supreme Court, an expert witness may reach professional opinions as to the value of the remainder after condemnation of a part without supportive market data, and an objection or complaint to such testimony would go to its weight and not to its admissibility. The issue here is whether the trial court committed error by permitting the owners to testify as to the damage to the remainder without satisfying the prerequisites of *Zirjacks* set out below.

*Zirjacks*, supra at 838, held "[o]ne claiming damages to land must show the nature of the damage, the effect upon various portions of the tract and the relationship of the same to market value. A mere conclusion as to market value is insufficient for this purpose." *Wheeler*, supra at 301, and a number of other cases, held "[t]he above rule applies to a party claiming damages but not to the testimony of expert value witnesses." (Emphasis added)

Only one of the owners, Conrad Allison, testified as to the value of the remainder. He said the remainder would have been reduced in value $100 per acre. In our view the admission of this testimony was error because it did not comply with the *Zirjacks* rule. However, we hold that such error was not a reversible error. The jury found that the damage to the remainder was approximately $15 or $16 per acre even though both Conrad Allison and his expert witness Rocquemore testified to a greater value. We hold such error did not cause the rendition of an improper judgment. Tex.R. Civ.P. 434.

The owners' expert witness Rocquemore also testified that the land with the timber was worth $800 per acre, and the 5.43 acre right-of-way had a value of $800 per acre before the taking and $30 per acre after the taking. He also said that in his opinion, the remainder depreciated in total value of $18,322, which according to his calculations was 2½%. The jury found damage to the remainder to be approximately $15 per acre, whereas Rocquemore approximated it to be $19 or $20 per acre, depending upon the total remaining acreage calculated. We therefore conclude that the owner's testimony of $100 per acre damage to the remainder did not improperly influence the jury nor result in the rendition of an improper judgment.

■ Appellant next contends that the trial court erred in overruling its objection to the qualifications of owners' expert witness to give an opinion of the value of the land because (1) the witness stated that his opinion was based on a comparative sale method of appraisal and the witness could not pro-

duce any information of any other sales, (2) the witness testified his opinion of value of acreage used for oil and gas operations and pipelines was a speculative opinion, and (3) the witness was not qualified to give an opinion of the depreciation in value of the remainder.

The witness Rocquemore qualified as an expert witness and testified he used the comparative sale method of appraisal, but he left such data on comparative sales in his office and could not recall what specific sales he considered. He did, however, testify that he was familiar with real estate values and timber values in Panola County, had experience appraising and evaluating timber, had a Texas license as a realtor, and belonged to the National Association of Realtors, Texas Association of Realtors, Panola County Board of Realtors, the National Association of Farm and Ranch Brokers and the National Appraisal Organization. He also had been to seminars at the University of Texas and Texas A. & M. and to several taught by the real estate profession, and he had taught a class in real estate at Panola Junior College for four years.

■ We recognize that mere membership in real estate or appraisal organizations is not sufficient alone. In our view, however, the witness was qualified to testify to land and timber values in Panola County. Generally, in giving opinion evidence on value, including damages, the witness must possess a value-standard for the particular class and must have a knowledge of the market value (if there is one); this knowledge must be of values in the vicinity, and it must be based in some degree on personal observation and not solely on hearsay. Ray, 2 Texas Practice, Law of Evidence, § 1422. Rocquemore said he used the comparative sales method, but he did not have with him a record of such sales. Lack of such supportive data would not disqualify him but would go to the weight of his evidence and not to its admissibility. *Texas Electric Service Co. v. Wheeler*, 551 S.W.2d 341, 342–3 (Tex.1977). Accordingly, points 4, 5 and 6 are overruled. The record shows the witness had opportunities to form an

intelligent opinion on the subject of current prices for the land and the timber. For these reasons we find no abuse of discretion by the trial court.

■ In points 7 through 11 appellant complains that the trial court overruled its special exception to landowners' answer seeking damages for trespass off the right-of-way and for construction damages. In addition appellant moved for a separate trial on these issues which was denied by the court. It further complains of the trial court's denying its motion in limine to suppress evidence of trespass and construction damage.

Appellant calls our attention to two early cases, *City of San Antonio v. Fike*, 211 S.W. 639 (Tex.Civ.App.–San Antonio 1919, no writ) and *Throckmorton County v. Howsley*, 28 S.W.2d 951 (Tex.Civ.App.–Eastland 1930, no writ), to support its contention that the damage to the land outside the right-of-way taken which occurred after the taking should not have been tried in the condemnation suit. These two cases do hold that damages on account of negligent or improper construction cannot be recovered by the landowner in a condemnation suit.

There are a number of cases holding that an action for damages for trespass or unlawful entry upon premises occurring *before* condemnation may be tried together with the condemnation suit, *Alexander v. City of San Antonio*, 468 S.W.2d 797, 799 (Tex.1971); *State v. Lasiter*, 352 S.W.2d 915, 917 (Tex.Civ.App.–Waco 1961, writ dism'd); *Glade v. Dietert*, 156 Tex. 382, 295 S.W.2d 642, 647–8 (Tex.1956), but we find only one case in which the issue of joinder was raised holding that an action in tort for damages occurring *after* the taking may be tried with the condemnation suit. In *Gulf, Colorado and Santa Fe Railway Co. v. Payne*, 308 S.W.2d 146, 148–9 (Tex.Civ. App.–Fort Worth 1958, no writ) the court said:

> "We see no reason why the same issues (dust, noise, discomfort and inconvenience resulting from railroad construction work) could not be tried out in a condemnation case, nor indeed why they would

not be more properly tried as part and parcel thereof than in some separate proceeding, where a condemnation suit must be tried in any event."

*Glade v. Dietert*, supra, where the damage occurred *before* the taking, is cited as authority for the above statement and is therefore not on point. We have found no expression of the Supreme Court corresponding to the *Payne* case.

As late as 1975 in *Heddin v. Delhi Gas Pipeline Co.*, 522 S.W.2d 886, 889 (Tex.1975), the Supreme Court by footnote expressly reserved any holding whether "liability for damages incurred from a rupture in the pipeline located on the land involved in the condemnation should be adjudicated in the condemnation proceeding."

In spite of the rule against multiplicity of suits and the rule that the trial court has great discretion upon questions of joinder of parties and causes of action, and Rules 51 and 174 of Texas Rules of Civil Procedure, the case law in Texas is to the effect that an action in tort for damages *after* the taking in a condemnation suit may not be tried with the condemnation suit but must be tried in a separate action. *City of Trinity v. McPhail*, 131 S.W.2d 803, 808 (Tex.Civ. App.–Galveston 1939, no writ); *Texas Pipe Line Co. v. Ennis*, 57 S.W.2d 178, 179 (Tex. Civ.App.–Beaumont 1933, reversed on other grounds, 127 Tex. 470, 93 S.W.2d 148); *Fort Worth & D.S.P. Ry. Co. v. Gilmore*, 2 S.W.2d 543, 545 (Tex.Civ.App.–Amarillo 1928, no writ); *City of San Antonio v. Fike*, supra at 641; *Jefferson County Traction Co. v. Wilhelm*, 194 S.W. 448, 451 (Tex.Civ. App.–Beaumont 1917, no writ). See also *Ideal Laundry Co. v. City of Dallas*, 64 S.W.2d 801, 803 (Tex.Civ.App.–Dallas 1933, writ dism'd).

Tex.Rev.Civ.Stat. art. 3265 limits the damages in a condemnation suit to the damages sustained *"by reason of such condemnation."* (Emphasis added). We conclude that the trial court erred in permitting testimony and submitting to the jury the issue of damages to timber outside the right-of-way condemned by appellant since it occurred *after* condemnation and such dam-

age was not sustained by reason of such condemnation.

The award of the commissioners was $10,-498, and appellant deposited that amount on October 5, 1977, so that it could take possession. The jury found that the landowners' damages exceeded the commissioners' award by $8,389, and the trial court in its judgment granted the landowners' interest on this amount at the rate of 9% per annum from October 6, 1977. Appellant complains that such was error because there were no pleadings to support such pre-judgment interest, and, additionally, the maximum rate permitted by law is 6% per annum.

■ The prayer of the landowners was "that upon final hearing they have and recover of and from the Plaintiff-Condemnor their just damages and compensation and costs as the law provides." There are many cases holding that pre-judgment interest may be recovered when specifically prayed for or under a general plea. *Trinity River Authority of Texas v. Sealy & Smith Foundation*, 435 S.W.2d 864, 865 (Tex.Civ.App.–Beaumont 1968, writ ref'd); *Mr. Eddie, Inc. v. Ginsberg*, 430 S.W.2d 5 (Tex.Civ. App.–Eastland 1968, writ ref'd, n. r. e.); *Lone Star Gas Co. v. Smith*, 405 S.W.2d 238, 239 (Tex.Civ.App.–Waco 1966, no writ); *John F. Buckner & Sons v. Arkansas Fuel Oil Corp.*, 319 S.W.2d 204, 207 (Tex.Civ. App.–Waco 1958, writ ref'd, n. r. e.). We find that landowners' prayer here qualifies as a general prayer for all relief entitled to and would support an award of prejudgment interest.

The award of prejudgment interest in the amount of 9% is affirmed. According to Tex.Att'y Gen. Op. No. H–886 (1976), the legal rate of interest *to* judgment in eminent domain cases is 9% after September 1, 1975.

The judgment of the trial court wherein landowners are awarded $1,000 for damages after the taking and during the construction of the pipeline is severed from the main cause and reversed and remanded. In all other respects the judgment is affirmed.

SUMMERS, C. J., not participating.